# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA

Plaintiff,

v.

THE STATE OF NEW MEXICO; MICHELLE
LUJAN GRISHAM, in her Official Capacity as
Governor of the State of New Mexico; RAUL
TORREZ, in his Official Capacity as Attorney
General of the State of New Mexico; CITY OF
ALBUQUERQUE; TIMOTHY KELLER, in his
Official Capacity as Mayor of the City of
Albuquerque;

Defendants.

Civ. No. 26-cv-1471

**Declaration of Jose P. Ortez**

**DECLARATION OF JOSE P. ORTEZ**

I, Jose P. Ortez, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

I.     **Personal Background**

1.     I am the Assistant Field Office Director (AFOD) for the U.S. Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) El Paso Office in Chaparral, New Mexico. I have served in this capacity since July 27, 2025.

2.     I am currently assigned to the Otero County Processing Center (OCPC) as the AFOD located in Chaparral, New Mexico. In that position, my responsibilities include the management of all ERO personnel as well as provide oversight of all case management and detention operations at the OCPC. I also supervise ERO staff responsible for the detained population's case management,

1

including detention and removal of illegal aliens at the OCPC.

3.      I have been employed by DHS ICE in various roles since December 2008. Prior to my current position as an AFOD with ERO El Paso, I served as a Supervisory Detention and Deportation Officer (SDDO) for the OCPC from September 2020 to October 2022, and the SDDO for El Paso Proper, the area administratively recognized as the City of El Paso within the El Paso Area of Responsibility (AOR), excluding the sub-offices, from October 2022 to July 2025.

4.      Due to my experience and official duties, I am familiar with ICE's contracting processes and detention space needs throughout the United States, including New Mexico. This declaration is based on my personal knowledge and obtained in the course of my official duties.

## II.     HB 9's Impact on ICE Operations

5.      ICE is charged with enforcement of more than 400 federal statutes, and its mission is to protect the United States from border-related crime and illegal immigration that threaten national security and public safety. ICE is responsible for removing aliens who lack lawful immigration status or are otherwise removable under immigration laws. ICE has statutory authority to detain aliens pending removal proceedings and/or removal from the United States.

6.      Detention is a necessary component of immigration enforcement. While ICE has discretion to release certain aliens within its custody, it is required to detain categories of aliens subject to mandatory detention under immigration laws or those who pose a risk to public safety.

7.      I am aware that in February 2026, the State of New Mexico enacted House Bill No. 9 (HB 9), which prohibits local governments from signing detention contracts with ICE for civil immigration detention, including an Intergovernmental Services Agreement (IGSA). When the law takes effect on May 20, 2026, it will force the closure of OCPC and significantly impact law enforcement operations in New Mexico and the surrounding region.

###     A.     Otero County Processing Center

2

8. The Otero facility is a mission critical location for DHS and ICE operations nationwide. OCPC is a fully secure detention facility owned by Otero County and operated by Management and Training Corporation (MTC), housing male and female ICE detainees of all classification levels. ICE contracted with Otero County for dedicated use of the facility under an Intergovernmental Services Agreement (IGSA) in 2008 and the facility received its first detainees on June 23, 2008.

9. OCPC operates under the Performance-Based National Detention Standards (PBNDS) 2011 (Revised 2016). The facility was accredited by the American Correctional Association in November 2021, the National Commission on Correctional Health Care February 2022, and DHS PREA in December 2023.

10. OCPC has a contractual capacity designated for 800 males and 200 females. The average total detainee population was 885 for Fiscal Year 2025 and 902 for Fiscal Year 2026. OCPC is also the only civil immigration detention facility in New Mexico able to accommodate female detainees and higher-risk individuals.

11. The facility's geographic location offers close proximity to the El Paso ERO Field Office and multiple Ports of Entry (approximately 21 miles from Ysleta, 24 miles from Americas, 42 miles from Tornillo, and 46 miles from Santa Teresa), ease of transfers and removals via major highway access and an international airport, as well as access to a large pool of qualified staff in greater El Paso.

12. OCPC is consistently one of the best facilities in terms of staff, conditions, and its track record for safely and humanely handling detainees. The facility consistently performs well in inspections. During the most recent compliance inspection of OCPC by ICE's Office of Detention Oversight (ODO) in February 2026, ODO assessed OCPC's compliance with 29 standards under PBNDS 2011(Revised 2016) and found the facility in compliance with all 29 standards. Since the last inspection in November 2024, OCPC's compliance has trended upward, improving from one deficient

standard and one deficiency in November 2024 to no deficiencies during the most recent full inspection. During this inspection, ODO interviewed 34 detainees who each voluntarily participated. None made allegations of discrimination, mistreatment, or abuse, and all reported satisfaction with facility services. OCPC also underwent a National Commission on Correctional Health Care (NCCHC) audit in February 2026. The facility successfully passed the audit, demonstrating compliance with NCCHC standards for correctional health care.

**B.      Impact of Losing the Primary Detention Center in the El Paso Area of Responsibility (AOR)**

13.      While ICE utilizes multiple detention facilities across the AOR, available bed space near OCPC is strictly limited. ICE has two detention facilities in New Mexico and two facilities in Texas. Cibola County Correctional Center (Cibola) is located in Milan, New Mexico, which is 326 miles or approximately five hours by car from OCPC and is significantly further from the U.S./Mexico border. Torrance County Detention Facility (Torrance) is located in Estancia, New Mexico, which is 216 miles from OCPC or approximately three hours by car from OCPC and is also significantly further from the U.S./Mexico border.

14.      El Paso Service Processing Center (SPC) in El Paso, Texas has a capacity of 840 detainees, which are designated for 224 females and 616 males.

15.      Camp East Montana in El Paso, Texas, is located approximately 30 miles (about 45 minutes by car) from OCPC. Built in 2025 as a temporary detention facility, it has a contractual capacity of 3,250 detainees (male and female) of all security levels. Of the 3,250 beds, 1,008 are designated for females and 2,242 for males. This facility is a soft-sided facility which is prohibitively expensive to operate and is not designed for long-term use. The facility does not currently have any available bed space to house detainee transfers from OCPC.

16.      OCPC is the only detention facility in New Mexico contracted to house female aliens.

4

Torrance has a capacity of 505 for males only and Cibola has a capacity of 314 for males only. The inability of ERO to utilize a facility in New Mexico to house female detainees has significant operational and logistical impacts. With OCPC being the only contracted detention facility in New Mexico capable of housing female aliens, any loss of available bed space or transfer restrictions directly affects ERO's ability to manage female populations within the state. This limitation may result in the need to transfer female detainees to facilities outside New Mexico, increasing transportation costs, complicating case management, and potentially separating detainees from local support networks and legal resources. Additionally, it may strain capacity at other regional facilities and hinder ERO's ability to respond efficiently to fluctuations in detainee populations.

17. The forced closure of OCPC under HB 9 would compel ICE to divert detained aliens to facilities such as Camp East Montana, which is currently not a long term detention facility. Forcing ICE to rely on facilities not equipped to secure long-term detention directly undermines the agency's statutory mandate to detain aliens pending removal proceedings, creating unacceptable and immediate risks to enforcement operations, detainee welfare, and public safety.

18. Under section 235(b) of the Immigration and Nationality Act, arriving aliens not clearly entitled to admission must be detained for a proceeding under section 240 of the Immigration and Nationality Act, or for expedited removal. The loss of OCPC would severely impair ICE's ability to comply with this statutory detention mandate. Without OCPC's dedicated bedspace, the federal government would be forced to release unvetted, inadmissible aliens into the United States. Many of these arriving aliens attempt entry with fraudulent documents or no identifying information, posing a direct and immediate threat to national security and border integrity. Release is especially likely if bedspace is not immediately identified, transfer logistics cannot be arranged quickly, or special circumstances exist (such medical needs).

### C.      Relocation of Detainees and Attendant Consequences

19.      If HB 9 forces OCPC's closure, detainees will have to be relocated at great cost to the government. ICE does not have the capacity to house OCPC detainees in prisons or jails in the El Paso AOR, so all current detainees would need to be relocated outside New Mexico to neighboring States.

20.      The same applies to future aliens apprehended in the El Paso AOR. Without OCPC, ICE would need to schedule and complete out-of-state transfers daily, resulting in significant financial and operational costs.

21.      ICE does not currently have ground-transportation contracts sufficient for daily out-of-state transfers. ICE would need to divert its law enforcement personnel to transport aliens outside of the El Paso AOR, critically affecting daily enforcement operations. Personnel used for transport duties, would be unavailable for arrest, detention, and removal functions, resulting in fewer arrests of criminal aliens and increased public safety risks. Long-distance transport would further strain ICE resources.

22.      Increased transportation heightens security concerns for detainees, federal personnel, and the public. Frequent transport increases the time detainees are outside the security of a detention facility and may provide opportunities for adversarial encounters. Detainees with medical or mobility concerns may be adversely affected by frequent transport.

23.      Frequent transport would cause other harm to ICE, its detainees, and the public. ICE facilities in neighboring states would need to adjust limited resources due to the influx of detainees from New Mexico, placing greater strain on operations and increasing danger to personnel supervising higher detainee-to-officer ratios. Fewer personnel may result in increased work hours, fatigue and personnel turnover, eroding a dedicated and experienced workforce. Relocation outside the El Paso AOR may also reduce detainees' access to family and visitors.

24.      Relocating detainees away from OCPC would severely restrict familial access, as the replacement facilities may be located hundreds of miles from Otero Facility.  Families would be

6

required to undertake lengthy and costly travel—often several hours each way—to visit detainees. Many of these alternative facilities are less capable of accommodating visitors due to limited visiting hours, stricter security protocols, and logistical challenges, further diminishing the likelihood of meaningful family contact. The loss of regular family access can significantly delay the collection of vital evidence and information, resulting in prolonged detention periods and postponements of immigration hearings and removal proceedings. For many detainees, family members are the primary source of documents, affidavits, and other materials necessary to present their cases. Without timely access to family, detainees may be unable to obtain these materials, directly impacting their ability to secure relief from removal or expedite their removal.

25. The loss of OCPC in ICE's detention network will have a substantial negative impact on ICE's ability to detain and remove aliens within the El Paso Area of Responsibility (AOR). Although ICE utilizes two additional detention facilities in New Mexico and one in Texas near Otero, none of these facilities are capable of absorbing Otero's detained population. These facilities are already operating near or at capacity and lack the infrastructure, staffing, and resources necessary to accommodate a significant influx of detainees. Additionally, the geographic limitations and logistical challenges associated with these facilities would complicate the transfer and management of detainees, potentially resulting in overcrowding, increased transportation costs, and delays in processing. The inability to house detainees locally would force ICE to relocate individuals to facilities outside the El Paso AOR, possibly in the interior of the United States, further straining resources and undermining operational efficiency.

26. This disruption would directly affect ICE's ability to conduct timely removal proceedings, coordinate with local law enforcement, and maintain access to legal counsel and family members for detainees. The loss of OCPC would not only reduce detention capacity but also compromise the effectiveness of ICE's enforcement and removal operations in the region.

Executed this 7th day of May 2026.


JOSE P ORTEZ  Digitally signed by JOSE P ORTEZ
Date: 2026.05.07 15:05:10 -06'00'

_____

Jose P. Ortez
Assistant Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security