**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**THE UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                           **No. 1:26-cv-01471-KG-LF**

**THE STATE OF NEW MEXICO;
MICHELLE LUJAN GRISHAM, in her
Official Capacity as Governor of the State
of New Mexico; RÁUL TORREZ, in his
Official Capacity as Attorney General of
the State of New Mexico; CITY OF
ALBUQUERQUE; TIMOTHY KELLER,
in his Official Capacity as Mayor of the
City of Albuquerque; DOÑA ANA
COUNTY; SCOTT ANDREWS, in his
Official Capacity as Manager of Doña Ana
County; BERNALILLO COUNTY;
CINDY CHAVEZ, in her Official Capacity
as Manager of Bernalillo County;**

     **Defendants.**

**GOVERNOR LUJAN GRISHAM'S MOTION
<u>TO DISMISS FIRST AMENDED COMPLAINT</u>**

Governor Michelle Lujan Grisham, by and through her counsel of record, hereby submits

her motion to dismiss the United States' First Amended Complaint [Doc. 42] pursuant to Federal

Rule of Civil Procedure 12(b)(1), (6).[1] As grounds for this motion, the Governor states as follows:

**INTRODUCTION**

The United States' suit against the State of New Mexico, Governor Lujan Grisham, and

Attorney General Rául Torrez (collectively, the "State Defendants") fails for numerous reasons.

---

[1] Counsel for the United States was contacted and confirmed it opposes this motion.

In addition to failing on the merits,[2] the United States' claims against the Governor as a party are improper. The only action the Governor is alleged to have taken—signing the Immigrant Safety Act into law—is a quintessential legislative act for which she is entitled to absolute legislative immunity. She is likewise immune from suit under the Eleventh Amendment because she has no particular duty to enforce the Immigrant Safety Act and, therefore, does not fall within any exception to sovereign immunity. Thus, the Court should dismiss the Governor if it does not dismiss this action against the State Defendants in toto.

## BACKGROUND

As relevant to this Motion, the New Mexico Legislature passed House Bill 9, which enacted the Immigrant Safety Act, on February 3, 2026, and the Governor signed House Bill 9 into law two days later. *See* H.B. 9, 57th Leg., 2nd Sess. (N.M. 2026); *2026 Regular Session - HB 9*, N.M. Leg., https://www.nmlegis.gov/Legislation/Legislation?Chamber=H&LegType=B&LegNo =9&year=26 (last visited June 22, 2026). Among other things, the Act prohibits public bodies from entering into, modifying, or continuing agreements to detain individuals for federal civil immigration violations and requires termination of any such existing agreements at the earliest permissible date. *See* H.B. 9, § 3. The legislation specifically charges the Attorney General and district attorneys with enforcing the Act. *See* H.B. 9, § 5(A). The United States subsequently brought the instant action against the State of New Mexico, Governor Lujan Grisham, and Attorney General Rául Torrez, claiming the Immigrant Safety Act is preempted, contravenes principles of intergovernmental immunity, and violates the Contracts Clause. [Doc. 1]. Shortly

---

[2] The Governor incorporates by reference and adopts the Attorney General's arguments concerning why the United States' preemption, intergovernmental immunity, and Contracts Clause claims should be dismissed. *See* D.N.M.LR-Civ. 7.1(a); [Doc. 49].

2

after Defendants filed motions to dismiss the suit, the United States amended its complaint to add additional allegations and parties. [Doc. 42].

## DISCUSSION

### I.    Standard of review

The Court must dismiss a complaint under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation modified). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). Courts apply these same standards when addressing a facial attack on the complaint's allegations as to subject matter jurisdiction pursuant to Rule 12(b)(1). *See Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

### II.    The Governor is entitled to legislative immunity

"The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law." *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998). But this immunity does not only apply to legislators. "[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Id.* at 55. Thus, "[a] governor who signs into law or vetoes legislation passed by the legislature is also entitled to absolute immunity for that act." *Kizzar v. Richardson*, 2009 WL 10706926, at *6

3

(D.N.M. Oct. 31, 2009) (quoting *Torres-Rivera v. Calderon-Serra*, 412 F.3d 205, 213 (1st Cir. 2005). When applicable, "[l]egislative immunity applies to actions seeking damages and declaratory or injunctive relief." *Bragg v. Chavez*, 2007 WL 6367133, at \*9 (D.N.M. Nov. 13, 2007) (citing *Sup. Ct. of Va. v. Consumers Union of U.S.*, 446 U.S. 719, 732 (1980)).

Here, the United States does not, as it cannot, point to any action by the Governor other than acts she took in her legislative capacity. The only relevant act the United States claims the Governor took was signing the Immigrant Safety Act into law. *See* [Doc. 1 ¶¶ 5, 70]. But this is a quintessential legislative function protected by absolute legislative immunity. *See Kizzar*, 2009 WL 10706926, at \*6; *accord Women's Emergency Network v. Bush*, 323 F.3d 937, 950 (11th Cir. 2003) ("Under the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law."); *see generally Bogan*, 523 U.S. at 55 (citing case for proposition that "signing or vetoing of a bill constitutes part of the legislative process"). Left with nothing else, this Court should dismiss the Governor.

## III.    The Governor is entitled to sovereign immunity

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (citation modified). "And because an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity, the Eleventh Amendment provides immunity when state officials are sued for damages in their official capacity." *Id.* (citation modified). Such immunity applies unless the state waives its sovereign immunity, Congress validly abrogates the state's immunity, or the suit falls within the legal fiction of *Ex parte Young*, 209 U.S. 123 (1908), by seeking prospective relief for the officials' ongoing violation of federal law. *See Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001).

The only potential exception to sovereign immunity does not apply here. The United States does not, as it cannot, claim that New Mexico has waived its sovereign immunity or that Congress has validly abrogated the state's immunity for this suit. *See generally* [Docs. 1-2]. Rather, it appears the United States relies solely on the *Ex Parte Young* exception by seeking prospective relief for state officials' alleged ongoing violation of federal law. However, this exception applies only if the Governor has "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Peterson*, 707 F.3d at 1205 (citation modified).[3] That is not the case here, as House Bill 9 is merely a general law that the Legislature has charged the Attorney General and district attorneys with enforcing. *See* H.B. 9, § 5(A).

The United States' arguments to the contrary are unavailing. The United States asserts that the Governor "is sued in her official capacity as the '[t]he supreme executive power of the state' and the officer tasked with 'tak[ing] care that the laws be faithfully executed.'" [Doc. 42 ¶ 26 (quoting N.M. Const. art. V, § 4)]. However, this general constitutional duty is insufficient to subject the Governor to every suit seeking to enjoin enforcement of every New Mexico law. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 967 (10th Cir. 2021) ("[N]either the Governor nor the Attorney General has a particular duty to enforce the challenged statute. Rather, their connection to the exclusive representation statute stems from their general enforcement power. But this does not suffice for *Ex parte Young*."); *see also Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 739 (10th Cir. 2024) (explaining that it would be "inconsistent with state sovereign

---

[3] It also does not apply when, as here, a party sues a state directly. *See Norton v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 862 F.3d 1236, 1251 (10th Cir. 2017) ("Although the *Ex Parte Young* doctrine permits suits against *officials*, it has no application in suits against the States and their agencies, which are barred regardless of the relief sought." (citation modified)). As such, the Court should also dismiss the State of New Mexico as a party if it does not dismiss the suit against the State Defendants entirely.

immunity" to conclude that "a general duty to enforce the law [is] sufficient to avoid immunity" because "the constitutionality of every act passed by the legislature could be tested by a suit against the governor" (quoting *Ex parte Young*, 209 U.S. at 157)).

The Court should also reject the United States's attempt to bootstrap the Governor into this suit through her relationship with the Attorney General. The United States points out that the Governor "'has control over' Attorney General Torrez 'and, therefore, may direct whether and to what extent' [the Act] is enforced." [Doc. 42 ¶ 26 (quoting *Hernandez v. Lujan Grisham*, 499 F. Supp. 3d 1013, 1049 (D.N.M. 2020), and citing *Petrella v. Brownback*, 697 F.3d 1285, 1293-94 (10th Cir. 2012))].[4] It is true, the Governor has the authority to direct the Attorney General to "prosecute and defend in any other court or tribunal all actions and proceedings, civil or criminal, in which the state may be a party or interested." N.M. Stat. Ann. 8-5-2(B) (1975). But the fact remains that the Governor does not have any direct enforcement role vis-à-vis the Act. *See* H.B. 9, § 5(A). The Governor does not lose her sovereign immunity simply because she could theoretically direct the Attorney General to use *his authority* to enforce the Act. *See Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) ("[G]eneral supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." (citation modified)); *Common Cause Florida v. Desantis*, 2022 WL 19978293, at *3 (N.D. Fla. Nov. 8, 2022) (finding that the Florida governor was not a proper defendant even though the secretary of state was subject to his "oversight, direction, and control"); *cf. Free Speech*

---

[4] Neither of these cases help the United States. *Petrella* did not analyze sovereign immunity but only whether the parties had standing to sue the Oklahoma governor and attorney general. 697 F.3d at 1292-96. The same goes for *Hernandez*. 499 F. Supp. 3d at 1049-55. Moreover, the Governor was much more closely involved in the challenged policy at issue there. *See id.* at 1052.

*Coal.*, 119 F.4th at 741 (rejecting argument that Utah attorney general was a proper defendant even if he could advise officials on enforcing challenged act as "simply too tenuous").

Likewise, the Governor's general support of the Act and communications with citizens and other officials is insufficient. The United States alleges that the Governor "has helped enforce [the Act] by corresponding with New Mexico citizens concerning the limited ability of state law enforcement to intervene in immigration enforcement activities." [Doc. 42 ¶ 26]. This is irrelevant. As the Fourth Circuit has explained:

> The fact that [the Virginia governor] has publicly endorsed and defended the challenged statutes does not alter our analysis. The purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute.

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). Because the Governor is not "directly involved in enforcing" the Act, *id.*, she retains her sovereign immunity. Therefore, the Governor must be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Governor if it does not dismiss the United States' claims against the State Defendants in whole.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
**LIZDEBETH CARRASCO-GALLARDO**
*Associate General Counsel to Governor Michelle Lujan Grisham*

490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.Duffy@exec.nm.gov
Lizdebeth.Carrasco-Gallardo@exec.nm.gov

8

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2026, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian