## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THE UNITED STATES OF AMERICA,

     Plaintiff,

v.                                 No. 1:26-cv-01471-KG-LF

THE STATE OF NEW MEXICO;
MICHELLE LUJAN GRISHAM, in her
Official Capacity as Governor of the State
of New Mexico; RÁUL TORREZ, in his
Official Capacity as Attorney General of
the State of New Mexico; CITY OF
ALBUQUERQUE; TIMOTHY KELLER,
in his Official Capacity as Mayor of the
City of Albuquerque; DOÑA ANA
COUNTY; SCOTT ANDREWS, in his
Official Capacity as Manager of Doña Ana
County; BERNALILLO COUNTY;
CINDY CHAVEZ, in her Official Capacity
as Manager of Bernalillo County;

     Defendants.

## GOVERNOR LUJAN GRISHAM'S REPLY IN SUPPORT OF
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Governor Michelle Lujan Grisham, by and through her counsel of record, hereby submits

her reply in support of her motion to dismiss the United States' First Amended Complaint [Doc.

42] pursuant to Federal Rule of Civil Procedure 12(b)(1), (6). As grounds for this reply, the

Governor states as follows:

### INTRODUCTION

Although the United States is correct that the Eleventh Amendment does not apply here, it

still fails to establish any basis for maintaining claims against the Governor because it does not

plausibly allege the essential Article III connection between the Governor and its asserted "injury."

Its theory rests on generalized executive duties, supervisory powers over independently elected officials, and vague references to unspecified correspondence—none of which satisfy the traceability or enforcement nexus required for standing. The United States' reliance on cases involving materially different constitutional structures and facts only underscores the absence of any meaningful connection here. Because the enforcement authority for the Immigrant Safety Act (the "Act") resides exclusively with independent state officials, the claims against the Governor must be dismissed in the event the Court does not reject the United States' claims against the State defendants in whole.[1]

## DISCUSSION

While the Governor's reliance on the Eleventh Amendment was misplaced, the underlying point remains that the United States has failed to allege a connection between the Governor and its purported "injury" sufficient to give this Court jurisdiction under Article III.[2] "[T]here is a common thread between Article III standing analysis and *Ex parte Young* analysis [under the Eleventh Amendment]." *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013); *see also Texas Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) (stating that "there is significant overlap between our standing and *Young* analyses" (citation modified)). Whereas *Ex Parte Young* requires that there be "some connection between a named state officer and enforcement of a challenged state law," Article III requires that "there is the requisite causal

---

[1] Again, the Governor incorporates by reference and adopts the Attorney General's arguments concerning why the United States' preemption, intergovernmental immunity, and Contracts Clause claims should be dismissed. *See* D.N.M.LR-Civ. 7.1(a); [Doc. 67].

[2] Though the Governor's motion did not specifically argue standing, "any party may raise the issue of standing at any point in a litigation." *Colorado Montana Wyoming State Area Conference of the NAACP v. Smith*, --- F.4th ---, 2026 WL 1945646, at *5 (10th Cir. July 6, 2026). This is especially so here, where the arguments are essentially identical to those previously made.

connection between their responsibilities and any injury that the plaintiffs might suffer." *Cressman*, 719 F.3d at 1146 n.8 (citation modified). Neither is satisfied here.

The causation element of Article III standing requires that the injury be "fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992). "To satisfy the traceability requirement, *the defendant's* conduct must have caused the injury." *Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961, 977 (10th Cir. 2020) (citation modified) (emphasis added). Additionally, when, as here, "a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007). "[P]laintiffs must demonstrate standing for each claim that they press against each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation modified).

Here, the United States fails to allege that the Governor caused its purported "injury" or that she has the authority to enforce the Act.[3] It first points to her to general constitutional duty to "take care that the laws be faithfully executed." [Doc. 42 ¶ 26 (quoting N.M. Const. art. V, § 4)]. However, an "officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a [law] they have no specific duty to enforce." *Bishop v. Oklahoma*, 333 Fed. Appx. 361, 365 (10th Cir. 2009); *accord Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances."). Holding otherwise "would quickly approach the nadir of the slippery slope" in which "each state's high policy officials would be subject to defend every suit challenging the

---

[3] As the United States has conceded that is cannot sue the Governor for any injury stemming from her signing of House Bill 9, the Governor does not rehash the issue of legislative immunity. *See* [Doc. 63 at 37 ("[T]he United States is not suing the Governor because she signed HB9)].

constitutionality of any state statute, no matter how attenuated his or her connection to it." *Bishop*, 333 Fed. Appx. at 365 (quoting *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 112-13, 116 (3d Cir. 1993)).

Next, the United States relies on the Governor's authority to direct the New Mexico Attorney General to prosecute actions pursuant to N.M. Stat. Ann. 8-5-2(B) (1975). *See* [Doc. 42 ¶ 26]. In other words, the United States claims the Governor is a proper defendant, not because *she* can enforce the Act, but because she could order another official to do so. *See* [Doc. 63 at 37]. This is insufficient. As previously explained, "general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citation modified); *accord Women's Emergency Network*, 323 F.3d at 949-50 ("Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction."); *Lakeside Roofing Co. v. Nixon*, 2011 WL 1465593, at *7 (E.D. Mo. Apr. 18, 2011) (finding governor improper party under *Ex Parte Young* even though he could direct the attorney general to aid in the prosecution of the statutes).

Lastly, the United States claims the Governor "has helped enforce [the Act] by corresponding with New Mexico citizens concerning the limited ability of state law enforcement to intervene in immigration enforcement activities." [Doc. 42 ¶ 26]. It is unclear what correspondence the United States is referring to or how simply communicating the well-known fact that states have "limited ability to intervene in immigration enforcement activities" somehow "enforces" the Act or causes the United States an injury sufficient to confer Article III standing. *See generally United States v. Washington*, 596 U.S. 832, 833 (2022) (stating that the Supremacy

Clause "prohibit[s] States from interfering with or controlling the operations of the Federal Government"). This Court need not guess at this conclusory and undeveloped allegation. *See Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016) (stating that "the plaintiffs bear the burden of establishing standing" and that the courts "consider only those arguments in favor of standing that the plaintiffs have adequately briefed"); *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements[.]"). But even if the Court were to interpret this vaguely described correspondence as expressing support for the Act, this would be insufficient. *Cf. Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (expressing support insufficient to show sufficient connection under *Ex Parte Young*); *Grant v. Lamont*, 2023 WL 5435941, at *2 (D. Conn. Aug. 23, 2023) (same); *Lakeside Roofing*, 2011 WL 1465593, at *6 (same).

The United States' reliance on *Petrella v. Brownback*, 697 F.3d 1285 (10th Cir. 2012), and *Hernandez v. Lujan Grisham*, 499 F. Supp. 3d 1013 (D.N.M. 2020), is unavailing. In *Petrella*, the Tenth Circuit summarily rejected the Kansas governor's argument that the plaintiffs failed to show that he caused their injury since he has "responsibility for the enforcement of the laws of the state." 697 F.3d at 1294. In support of this conclusion, the court cited Kan. Const. art. I, § 3, which provides: "The supreme executive power of this state shall be vested in a governor, *who shall be responsible for the enforcement of the laws of this state*." (Emphasis added).[4] In contrast to the Kansas constitution, however, the New Mexico constitution merely vests the Governor with the duty to "take care that the laws be faithfully executed." N.M. Const. art. V, § 4. The former directly

---

[4] The Governor respectfully disagrees with this conclusion. *See Bishop*, 333 Fed. Appx. at 365 (citing favorably cases reaching opposite conclusion). Of course, this Court would be bound by it if it were applicable; the Governor merely notes this to preserve the issue for any potential appeal.

charges the governor with "enforcement" whereas the latter indicates an indirect, supervisory role. *Cf. Kelly v. Lee*, 2020 WL 2120249, at \*2 (E.D. Tenn. May 4, 2020) ("[T]he Governor has the responsibility under the Tennessee Constitution to 'take care that the laws be faithfully executed.' In other words, he has 'general authority' to see that the laws properly executed but is otherwise not connected with the implementation and enforcement of the Act." (quoting Tenn. Const. art. III, § 10.)); *Neroni v. Zayas*, 2014 WL 1311560, at \*8 (N.D.N.Y. Mar. 31, 2014) ("Plaintiff does not identify any statutory provision giving the Governor the power to enforce the [challenged law], and the Governor's general constitutional duty to 'take care that the laws are faithfully executed' does not create a sufficiently close connection to enforcement.").

Moreover, the Tenth Circuit has since clarified the limited holding in *Petrella* regarding suits against governors and other state officials. For example, the Tenth Circuit recently held that the Governor was not a proper party to a suit challenging the constitutionality of a state law because the law empowered an independent board with enforcement. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 966-68 (10th Cir. 2021). In so holding, the court distinguished *Petrella* because "there was no indication the statutory provisions at issue fell outside the scope of [the Kansas governor's] general enforcement powers." *Hendrickson*, 992 F.3d at 968. The Tenth Circuit again distinguished *Petrella* on this basis just a few years later. *See Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 740 (10th Cir. 2024). This Court should do the same. In contrast to the law at issue in *Petrella*, the Act expressly vests the enforcement authority with the Attorney General and district attorneys—officials independent of the Governor.[5] *See* N.M. Stat. Ann. § 13-9-5 (2026); *see generally Johnson & Johnson v. Wilson*, 2025-NMSC-003, ¶ 18, 563 P.3d 841 (observing that

---

[5] As explained earlier, the Governor's general statutory authority to direct the New Mexico Attorney General to prosecute actions does not change this conclusion.

New Mexico has "an independently elected attorney general who does not serve at the will of the Governor" (citation modified)); N.M. Const. art. VI, § 24 (providing for election of district attorneys).

The United States' reliance on *Hernandez* is similarly misplaced. There, the plaintiffs challenged the New Mexico Public Education Department's pandemic-era school re-entry guidance limiting in-person attendance. *See Hernandez*, 499 F. Supp. 3d 1013. Judge Browning held that the Governor was a proper party because the Public Education Department stated it "has continuously collaborated with the Office of the Governor . . . to evaluate science-based criteria for deciding, whether, when, and to what extent to reopen schools" and the Governor herself "also indicated that she is heavily involved in the State's COVID-19 related education policy." *Id.* at 1052 (citation modified).[6] That is not the case here. The only "connection" the United States cites between the Governor and the Act is through an independently elected official and vaguely described statements "concerning the limited ability of state law enforcement to intervene in immigration enforcement activities." [Doc. 42 ¶ 26]. Consequently, the Court should find these cases unpersuasive.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Governor if it does not dismiss the United States' claims against the State Defendants in whole.

---

[6] Judge Browning also relied on *Petrella*. *See Hernandez*, 499 F. Supp. 3d 1052. As discussed, such reliance was mistaken. Moreover, *Hernandez* pre-dates the Tenth Circuit's subsequent clarification of the limited scope of *Petrella*.

Respectfully submitted,

*/s/ Holly Agajanian*
**HOLLY AGAJANIAN**
*Chief General Counsel to Governor Michelle Lujan Grisham*
**KYLE P. DUFFY**
*Deputy General Counsel to Governor Michelle Lujan Grisham*
**LIZDEBETH CARRASCO-GALLARDO**
*Associate General Counsel to Governor Michelle Lujan Grisham*
490 Old Santa Fe Trail, Suite 400
Santa Fe, New Mexico 87501
(505) 476-2200
Holly.Agajanian@exec.nm.gov
Kyle.Duffy@exec.nm.gov
Lizdebeth.Carrasco-Gallardo@exec.nm.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, I filed the foregoing via the CM/ECF filing system, which caused all counsel of record to be served by electronic means.

Respectfully submitted,

*/s/ Holly Agajanian*
Holly Agajanian

8