**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**THE UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**                                                                 **No. 1:26-cv-01471-KG-LF**

**THE STATE OF NEW MEXICO;
MICHELLE LUJAN GRISHAM, in her
Official Capacity as Governor of the State
of New Mexico; RAÚL TORREZ, in his
official Capacity as Attorney General of
the State of New Mexico; CITY OF
ALBUQUERQUE; TIMOTHY KELLER,**                      **ORAL ARGUMENT REQUESTED**
**in his Official Capacity as Mayor of the
City of Albuquerque; DOÑA ANA
COUNTY; SCOTT ANDREWS, in his
Official Capacity as Manager of Doña Ana
County; BERNALILLO COUNTY;
CINDY CHAVEZ, in her Official Capacity
as Manager of Bernalillo County,**

    **Defendants.**

**DEFENDANTS DOÑA ANA COUNTY[1] AND SCOTT ANDREWS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT IN LIEU OF ANSWER**

    NOW COME Defendants, Doña Ana County and Scott Andrews, in his official capacity as

County Manager of Doña Ana County (hereinafter "County Defendants"), by and through their

undersigned counsel of record, The New Mexico Association of Counties (Brandon Huss, David

Roman, and Bree Barnett) and hereby respectfully move this Court for an Order dismissing all

claims against them pursuant to Fed. R. Civ. P. 12(b)(6). County Defendants respectfully request

oral argument. Plaintiff opposes this motion. *See* D.N.M.LR-Civ 7.1(a).

---

[1] Defendant Doña Ana County is a nonsuable entity and is improperly named. *See* NMSA 1978, § 4-46-1 and Fed. R. Civ. P. 17. Undersigned counsel understands that Plaintiff will be submitting an unopposed motion to substitute party, which seeks to replace Doña Ana County with the properly named defendant, The Board of County Commissioners for the County of Doña Ana. Based on this understanding, County Defendants do not brief the naming issue in this motion, but do call the issue to the Court's attention in the event that the unopposed motion is not filed.

**INTRODUCTION**

Plaintiff asks this Court to invalidate Doña Ana County's Safe Communities for All Residents Resolution ("SCAR" or "Resolution") in its entirety. The SCAR is not a regulatory ordinance directed at federal officers or private parties. It is a County resolution governing the use of County employees, funds, property, and other local resources. It reflects the County's decision not to devote those resources to federal civil immigration enforcement except where federal or state law, regulation, or a court decision requires otherwise.

The First Amended Complaint does not plausibly allege that this policy conflicts with any enforceable federal mandate. Congress has authorized voluntary state and local participation in federal immigration enforcement; it has not required counties to provide personnel, facilities, information, or other assistance. A locality's decision not to participate in a voluntary federal program is not obstruction, and treating it as such would effectively permit the Federal Government to commandeer local employees and resources in violation of the Tenth Amendment.

The SCAR likewise neither regulates nor discriminates against the Federal Government. It controls only County conduct and County property; it does not direct federal officers, alter their legal duties, or impose penalties upon them. Nor does the FAC identify any similarly situated entity that receives more favorable treatment. The Resolution distinguishes between civil immigration enforcement and other governmental activities, not between federal and nonfederal actors.

Plaintiff's express-preemption theory fares no better. 8 U.S.C. §§ 1373 and 1644 regulate state and local governments rather than private actors and therefore lack the preemptive force required under *Murphy v. NCAA*. Numerous courts around the country have also concluded that those provisions violate the anticommandeering doctrine. In any event, the SCAR expressly yields whenever information sharing is required by federal law, eliminating any facial conflict. And

because the Resolution contains a severability clause, even a defect in one provision would not justify the wholesale invalidation Plaintiff seeks. The First Amended Complaint should therefore be dismissed as to County Defendants.

**LEGAL STANDARD**

Under Rule 12(b)(6), the Court reviews the complaint's allegations for plausibility; specifically, the Court queries whether enough facts have been pled to state a plausible claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). In reviewing the plausibility of a complaint, the Court assumes the truth of all well-pleaded facts and draws reasonable inferences therefrom in the light most favorable to the plaintiff. *See Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). This assumption, however, is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements. *See Ashcroft v Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Because Plaintiff brings this case as a facial challenge to the SCAR as a whole, it must demonstrate that none of the provisions of the Resolution can operate constitutionally under any set of circumstances. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987) ("a facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

The Resolution is attached to the First Amended Complaint as Exhibit D and is therefore part of the pleading for all purposes. Fed. R. Civ. P. 10(c). The Court may accordingly rely on the Resolution's actual text rather than on Plaintiff's characterizations of it. See *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). The Supreme Court has recently reaffirmed both the demanding nature of facial review and the requirement that it proceed provision by provision rather than by wholesale invalidation. *United States v. Rahimi*, 602 U.S. 680, 693 (2024); *Moody v. NetChoice, LLC*, 603 U.S. 707, 723-26 (2024).

## BACKGROUND

On May 12, 2026, the Doña Ana County Board of County Commissioners adopted Resolution No. 2026-67, entitled the "Amended Resolution Calling for Doña Ana County Employees to Support the Conditions Needed to Create 'Safe Communities for All Residents'" ("SCAR" or "Resolution"). SCAR at 1, 5. The Resolution amends a policy first adopted in 2014 and explains that changes in immigration enforcement and federal, state, and local leadership made revision of the earlier resolution necessary. *Id.* at 1.

The SCAR is not a regulatory ordinance imposing duties upon private persons or altering the legal obligations of federal officers. It does not impose civil or criminal penalties, or create generally applicable legal obligations. Instead, it is a resolution expressing the policy of the Board of County Commissioners and directing county operations. It is simply an internal governmental policy instrument, guiding the use of county resources.

The Resolution's findings identify the Board's responsibility for the public safety and general welfare of County residents and state that safe communities depend on sound public policy, public participation, and residents' ability to interact with County employees without fear. *Id.* The findings also note that every County department exists to provide public services

and encourage other local governments, schools, and private businesses to consider similar measures. *Id.*

The Resolution provides that County employees shall treat all residents in a manner respectful of human rights, supportive of safe-community conditions, and conducive to residents' ability to pursue productive lives free from fear. *Id.* at 1–2. It then directs the County Manager to implement the Resolution through seven operative sections addressing distribution, County funds and property, County facilities, access to non-public areas and records, employee compliance, limitations on the Resolution's undertaking, and severability. *Id.* §§ 1–7. The full text of the Resolution is attached as Exhibit D to the First Amended Complaint.

Section 1 directs the County Manager's Office to prepare and distribute written guidance describing the Resolution's requirements and to provide that guidance to County employees and specified governmental officials. SCAR § 1.

Section 2 governs the use of County funds and resources. It provides that, "[u]nless required by federal or state statute, regulation, or court decision," County personnel may not use County resources to assist in enforcing federal immigration law or to gather, transmit, or disseminate information concerning an individual's immigration status. SCAR § 2. Consistent with that general directive, the Resolution limits immigration-status inquiries and the conditioning of County services on immigration status, except where required by law. *Id.* §§ 2(A)–(B). It also provides that County personnel, acting in their official capacities, will not assist ICE or CBP investigations, detentions, or arrests involving alleged civil immigration violations. *Id.* § 2(C).

The Resolution further restricts the use of County-owned or operated property as a staging area, processing location, or operations base for immigration enforcement. SCAR § 2(D). It directs County departments to identify property that has been, or is likely to be, used for those purposes

and, where appropriate, post signs and secure access to the property. *Id.* §§ 2(E)–(G). Employees are instructed to report attempted or actual use of designated County property for immigration enforcement, and the County may not approve permits, contracts, or agreements when it reasonably believes County property or resources will be used to facilitate such enforcement. *Id.* §§ 2(H)–(I).

Section 3 designates all County-owned or operated facilities as "Safer Community Places." SCAR § 3. Section 4 directs the County to develop policies addressing voluntary consent to immigration-enforcement agents entering non-public areas or accessing student or patient records. *Id.* § 4(A). Those policies must preserve access authorized by a valid judicial warrant, subpoena, or court order, as well as entry justified by specified exigent circumstances. *Id.* § 4(A)(a)–(b). The Resolution also calls for employee training, signage identifying non-public spaces, and outreach to other facilities concerning similar policies. *Id.* §§ 4(B)–(C).

Violations of the Resolution's provisions by County employees are handled under the County's existing human-resources policies. SCAR § 5. The Resolution states that it is intended to enhance public safety and well-being, not to create new rights giving rise to monetary liability, and it contains a severability clause. *Id.* §§ 6–7.

## ARGUMENT

Along with laws passed by the State of New Mexico, City of Albuquerque, and Bernalillo County ("Challenged Laws"), and in keeping with challenges to similar laws passed by numerous other states and localities around the country, Plaintiff has challenged the legality of the SCAR on several grounds. As has already been resolved by courts throughout the nation, each of these challenges fails. Plaintiff contends that the SCAR as a whole is impliedly preempted by federal law, that it unlawfully regulates the federal government, and that it unlawfully discriminates against the federal government. In addition, Plaintiff claims that certain portions of the SCAR are

6

in direct conflict with 8 U.S.C. §§ 1373 and 1644 and are therefore expressly preempted. Plaintiff brings its complaint as a facial challenge, seeking to have the SCAR as a whole declared invalid, unconstitutional, and unenforceable, including sections that it does not even mention in the FAC. Each of Plaintiff's claims fails for the reasons detailed below.

**A. Plaintiff's Implied Preemption Claim Fails Because the SCAR is not Preempted by Federal Law.**

1.  The FAC Does not Identify a Federal Requirement that Conflicts with the SCAR.

In Count I of its FAC, Plaintiff contends that the SCAR (as well as the other Challenged Laws) is impliedly preempted because it "conflict[s] with federal law by obstructing the accomplishment and execution of Congress's full immigration purposes and objectives" as expressed through the Immigration and Nationality Act ("INA"). FAC at 61 ¶¶ 165-166. It allegedly does so by limiting the property and resources available to federal immigration authorities to carry out their jobs, including by restricting access to County-owned property. *Id*. at ¶ 170. Such failure to cooperate with advancing federal objectives is allegedly prohibited by the Supremacy Clause because it increases the cost of immigration enforcement efforts and stands as an obstacle to Congress' stated immigration enforcement goals. FAC at 62-63 ¶¶ 170-173. Such a claim fundamentally misapplies the concept of implied preemption and ignores the wholly voluntary nature of state and local partnerships with the federal government in this area.

Preemption exists in three varieties: field, express, and conflict. Field preemption occurs "[w]here Congress occupies an entire field" and "even complimentary state regulation is impermissible." *Arizona v. United States*, 567 U.S. 387, 401 (2012). Plaintiff does not allege that any portion of the SCAR is subject to field preemption. Express preemption occurs "when the language of the federal statute reveals an express congressional intent to preempt state law." *Voter Reference Foundation, LLC v. Torrez*, 160 F.4th 1068, 1080 (10th Cir. 2025). Plaintiff alleges that

certain provisions in Section 2 of the SCAR are expressly preempted, and those allegations will be discussed later in Part C of this brief. However, Plaintiff's allegations that the entire SCAR is invalid rest on its assertion that the SCAR is subject to conflict preemption, which occurs "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

But conflict preemption is not established by a mere showing that a local enactment makes the Federal Government's work more difficult or less convenient. Nor does a complaint state a plausible claim for preemption by simply repeatedly characterizing a local policy as "obstructing" or "interfering with" federal objectives. Instead, a plaintiff challenging a local enactment must plausibly allege how the particular provisions at issue conflict with specific federal requirements, which is necessarily a provision-specific inquiry tied to an identified mandate. *See Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) ("invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law; a litigant must point specifically to 'a constitutional text or a federal statute' that does the displacing or conflicts with state law." (plurality opinion) (citation omitted). The FAC does not do this, but rather only provides conclusory statements that the SCAR "obstructs" or "impedes" federal immigration enforcement. These are not well-pled facts for purposes of Fed. R. Civ. P. 8, *Iqbal*, or *Twombly*, and they do not identify a specific conflict as required.

Such an omission is especially significant in a case like this, involving local policy determinations about resource allocation and community values, because "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona*, 567 U.S. at 400 (citations omitted). Here, the SCAR

solely governs the allocation and expenditure of County resources, the use of County-owned property and facilities, County administrative forms and internal procedures, access to nonpublic County facilities, internal County personnel policies, and staff training and implementation. It is hard to imagine a more quintessentially historic local power than is being exercised through the passage of the Resolution. Because Plaintiff identifies no constitutional text or federal statute that requires a county to provide assistance to the federal government in implementing its immigration enforcement scheme, let alone a clear and manifest congressional mandate stripping them of their historic local authority, Count I should be dismissed on this basis alone.

    2.   The SCAR Does not Conflict with the INA by Declining Voluntary Cooperation.

Plaintiff appears to point to the INA's overarching purpose of prioritizing immigration enforcement as being a sufficient declaration of Congress' objectives to suggest that anything less than full cooperation with its scheme is forbidden. FAC at 62-63 ¶¶ 170-173. However, not only is the INA's stated purpose alone insufficient to create a requirement for local cooperation, but Plaintiff recognizes throughout the FAC that the INA relies on *voluntary* cooperation between states, localities, and the federal government to implement its provisions. *See, e.g. id.* at 61 ¶ 166 ("To fulfill [the INA's] purposes and objectives, Congress *permitted* state and local officials to *voluntarily* agree with the Federal Government to implement federal immigration law by performing federal immigration functions under the color of federal law as well providing detention facilities and services.") (emphasis added).

It defies logic to suggest that a policy decision to avoid participating in a voluntary opportunity is a constitutional violation. *See McHenry Cnty. v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) ("[i]t would make no sense to hold that a federal statute based on [local] cooperation preempts a [local resolution] withholding that cooperation."). The SCAR does not prevent any

9

other entity from entering into an agreement with the federal government, it simply functions as a declaration that Doña Ana County will not permit its resources to be used to further the federal government's immigration enforcement agenda, as is its right.

Plaintiff's principal contrary authority does not survive this framework. Plaintiff relies on *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999), for the proposition that a government may not bar its own employees from voluntarily cooperating with federal immigration authorities. That decision predates *Murphy* by nearly two decades, and its reasoning cannot be squared with *Murphy*'s holding that a federal command forbidding state action is no less a direct order than one compelling it. 584 U.S. at 473-78. It also addressed a measure barring employees from transmitting information they already possessed. The SCAR does not do that. It declines to devote County time and resources to gathering and supplying such information in the first instance, and it yields whenever federal law requires otherwise.

Plaintiff's reliance on federal administrative process fares no better. An immigration detainer is by regulation a "request." 8 C.F.R. § 287.7(a). Congress expressly provided that nothing in Section 287(g) requires a State or political subdivision to enter into an agreement. 8 U.S.C. § 1357(g)(9). An administrative arrest warrant authorizes federal officers to arrest the named individual; it does not command a third-party property owner to open non-public premises. Indeed, even a judicial arrest warrant does not by itself authorize entry into a third party's premises to search for the subject. *Steagald v. United States*, 451 U.S. 204, 213-16 (1981). And if a witness declines an immigration subpoena, Congress supplied the remedy: the Government may apply to a federal district court for an order compelling attendance and production. 8 U.S.C. § 1225(d)(4)(B). The SCAR does not purport to defeat any such order, and its savings clause preserves compliance whenever federal law validly requires it.

10

Put differently, "Congress may have hoped or expected that states would cooperate with" the federal government's enforcement mechanisms, but states and localities "are not bound by that hope or expectation." *Id. See also United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019) ("when questions of federalism are involved, we must distinguish between expectations and requirements."). Refusing to assist with the federal government's regulatory aims does not constitute obstruction. Plaintiff essentially complains that Doña Ana County is not as helpful as Plaintiff would like, but "refusing to help is not the same as impeding." *Id.* at 888 (citation omitted). "Merely because a state law 'inconveniences' the federal government does not render it preempted; 'the repugnance must be so direct and positive that the two acts cannot be reconciled or consistently stand together.'" *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 382 (D.N.J. 2020) (citation omitted), *aff'd*, 8 F.4th 176 (3d Cir. 2021)). Simply put, "the choice of a [local government] to refrain from participation [in immigration enforcement] cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal." *McHenry Cnty.*, 44 F.4th at 592 (quoting *California*, 921 F.3d at 890). *See also United States v. Colorado*, No. 25-cv-01391, 2026 WL 878882 (D. Colo. Mar. 31, 2026) (same); *United States v. Minnesota*, No. 25-cv-3798, 2026 WL 2085701 (D. Minn. July 20, 2026) (same). Plaintiff's claim that the SCAR is preempted because it poses an obstacle to the INA's enforcement mechanism must be dismissed.

Any contrary conclusion would effectively require local governments to assist the federal government with civil immigration enforcement. "If the State, County, and City cannot control whether and how their employees [cooperate] with the federal government, they cannot affirmatively opt-out of enforcing federal immigration laws." *United States v. Illinois*, 796 F.Supp.3d 494, 523 (N.D. Ill. 2025). That would run afoul of the anti-commandeering principle of the Tenth Amendment.

Under the Tenth Amendment, "all powers not explicitly conferred to the federal government are reserved to the states." *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014). "And conspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). "The anti-commandeering doctrine 'simply represents the recognition' that the Constitution purposefully 'withh[e]ld from Congress the power to issue orders directly to the States.'" *Colorado v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1058 (D. Colo. 2020) (quoting *Murphy*, 584 U.S. at 470–71). Thus, "the Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997).

A court within this Circuit applied these principles to a materially identical complaint earlier this year. In *United States v. Colorado*, Plaintiff challenged state and local measures limiting the collection and disclosure of immigration information, declining detention on civil immigration detainers and administrative warrants, and restricting federal immigration agents' access to state and local facilities. No. 25-cv-01391-GPG-KAS, 2026 WL 878882 (D. Colo. Mar. 31, 2026) (hereinafter "*U.S. v. Colorado*"). The court granted three motions to dismiss and closed the case, holding that each of Plaintiff's theories "would result in allowing Congress to conscript Colorado and Denver resources to implement the federal immigration scheme." *Id.* at *6. The court further adopted the reasoning of *Illinois* and *New York* on preemption, discrimination, and direct regulation, explaining that it was "wholly in accord with those courts." *Id.* at *6 n.4. Another federal district court reached these same conclusions on similar challenges brought by Plaintiff even more recently. *See United States v. Minnesota*, No. 25-cv-3798, 2026 WL 2085701 (D. Minn. July 20, 2026).

Requiring the County to open its property to federal immigration operations would also raise a serious Fifth Amendment problem, which is an independent reason to reject Plaintiff's construction. As the court explained in *U.S. v. Colorado*, beyond the absence of any enumerated power to commandeer state and local facilities, "the Fifth Amendment has been interpreted to proactively forbid federal physical occupation of state and local property without just compensation." *Id.* at \*5. A physical taking occurs where the government "requires the landowner to submit to the physical occupation of his land," *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992), and the Takings Clause reaches "the property of state and local governments when it is [taken] by the United States," *United States v. 50 Acres of Land*, 469 U.S. 24, 31 (1984). The relief Plaintiff seeks as to SCAR §§ 2(D) through 2(I) and § 4(A) would require the County to furnish County buildings and property as a staging area, processing location, and operations base for a federal program, without compensation and without any pleaded federal property right.

Federal appellate courts throughout the country have concluded that anti-commandeering principles prevent the federal government from requiring state or local governments to dedicate their resources to aid in the enforcement of federal immigration law. *See, e.g.*, *California*, 921 F.3d at 890 (upholding state restrictions on participating in immigration enforcement because the state "retains the right of refusal" under the Tenth Amendment); *McHenry Cnty.* 44 F.4th at 592 (same); *Galarza*, 745 F.3d at 644 (same). For this reason as well, the SCAR is not preempted by the INA and Count I should be dismissed against Doña Ana County in its entirety.

### B. Plaintiff's Unlawful Regulation and Unlawful Discrimination Claims Fail Because the SCAR Neither Regulates nor Discriminates Against the Federal Government.

In Counts II and III of the FAC, Plaintiff contends that the SCAR and other Challenged Laws contravene intergovernmental immunity. The doctrine of intergovernmental immunity prohibits states and local governments from directly regulating or discriminating against the

13

federal government. *See United States v. Washington*, 596 U.S. 832, 838 (2022). But because the SCAR neither seeks to control federal operations nor treats Plaintiff worse than similarly situated others, it does not implicate intergovernmental immunity.

    1.  The SCAR does not seek to regulate the federal government.

In Count II, Plaintiff makes the conclusory allegation that the SCAR and other Challenged Laws regulate the federal government "by imposing burdensome restrictions on the property and resources available to be used for federal civil immigration enforcement and detention purposes." FAC at 68 ¶ 177. This is a misapplication of the intergovernmental immunity doctrine. For the SCAR to constitute direct regulation, it must "place[] a prohibition on the Federal Government," *McHenry Cnty.*, 44 F.4th at 592, "constrain[] the conduct of federal agents and employees," *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010), or "improperly 'control' [federal] employee[s'] federal duties," *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 206 (5th Cir. 2024). Here, the SCAR seeks only to manage the allocation and use of the County's own resources and the conduct of its own employees, not Plaintiff's.

As discussed previously, the resolution dictates the policy position that no County funds or resources should be used to assist in enforcing federal immigration law or to gather, transmit, or disseminate information concerning an individual's immigration status, unless required by federal or state statute, regulation, or court decision. SCAR § 2. It directs County personnel not to request, transmit, or disseminate information regarding an individual's immigration status, and not to condition County services or benefits upon immigration status. *Id.* § 2(A). It further directs County personnel acting in their official capacities to refrain from assisting ICE or CBP in any investigation, detention, or arrest relating to alleged violations of civil immigration law. *Id*. § 2(C).

The authorities Plaintiff invokes in the FAC involve materially different laws and circumstances. For instance, in *United States v. King County*, cited in the FAC at 49-50 ¶ 132, the local government at issue used future airport leases to force private fixed-base operators to stop servicing ICE charter flights, notwithstanding an instrument of transfer guaranteeing federal use of the airport. 122 F.4th 740, 747-50, 754-58 (9th Cir. 2024). *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 321-28 (3d Cir. 2025), and *GEO Group, Inc. v. Newsom*, 50 F.4th 745, 755-60 (9th Cir. 2022) (en banc), cited in the FAC at 7-8 ¶ 13, involved statewide bans that prevented private contractors from performing the Federal Government's chosen detention function. And the Ninth Circuit's 2026 order concerning California's No Vigilantes Act, referred to in the FAC at 18 ¶ 44, addressed a law that commanded federal officers to display prescribed identification while performing federal duties, on pain of state criminal prosecution. *United States v. California*, No. 26-926, 2026 WL 1088674, at *5 (9th Cir. Apr. 22, 2026). The SCAR does none of these things. It regulates no private contractor, interferes with no pleaded federal deed, lease, or property right, and tells federal officers nothing about how to perform their work.

These challenged provisions simply do not regulate the federal government, only the County's own employees and resources. All the SCAR does is "dictate what local workers may and may not do; [it does] not control Plaintiff in any way." *Illinois*, 796 F.Supp.3d at 535. Such internal resource allocation decisions are not regulations of the federal government and do not implicate intergovernmental immunity. *See McHenry Cnty.*, 44 F.4th at 593 (no direct regulation where the challenged provision regulated only local entity, not the federal government); *United States v. New York,* 810 F. Supp. 3d 329, 352 (N.D.N.Y. 2025) (finding that similar provisions are not an attempt to regulate federal agents); *Illinois*, 796 F. Supp. 3d at 535; *Cnty. of Ocean*, 475 F. Supp. 3d at 385. Thus, Plaintiff's challenge to the SCAR brought as Count II should be dismissed.

2.  The SCAR does not discriminate against the federal government.

In Count III, Plaintiff contends that the SCAR and other Challenged Laws discriminate against the federal government by "restrict[ing] the use of government resources and access to property to assist in federal immigration law enforcement activities while permitting such resources and property to be used for other law enforcement purposes." FAC at 65 ¶ 186. As with Plaintiff's other theories, this misinterprets the concept.

The SCAR would be unlawfully discriminatory only if it singled out the federal government for "less favorable treatment" or regulated the federal government "unfavorably on some basis related to [its] governmental status." *United States v. Washington*, 596 U.S. 832, 839 (2022) (internal quotation marks omitted). But discrimination is a relative concept; both prongs of this test require that Plaintiff identify another group that Doña Ana County treats more favorably than it treats the federal government, which Plaintiff makes no attempt to do. *See Washington v. United States*, 460 U.S. 536, 544–45 (1983) ("The State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them."); *McHenry County*, 44 F.4th at 594 ("Differential treatment is critical to a discrimination based intergovernmental immunity claim."); *Illinois*, 796 F.Supp.3d at 533-34. The closest Plaintiff comes to identifying a comparator is a hazy allegation that the County permits its property and resources "to be used for other law enforcement purposes" FAC at 65 ¶ 186. But without naming a "specific law enforcement agency" and explaining "how it is similarly situated to ICE," *Illinois*, 796 F.Supp.3d at 534, Plaintiff's discrimination claim fails.

The SCAR applies equally to preclude the use of County funds or resources to "assist in the enforcement of federal immigration law," SCAR ¶ 2, regardless of who is involved in the enforcement. Similarly, it seeks to develop policies aimed at preventing voluntary consent to entry

16

into non-public areas or access to student or patient records (subject to exceptions) by "law enforcement agents engaged in or supporting immigration enforcement," SCAR ¶ 4(A), no matter who is engaged in the enforcement. To the extent Plaintiff characterizes these restrictions as predominantly impacting the federal government, it is unavailing. As many courts have recognized, "[t]he mere fact that [a local law] touches on an exclusively federal sphere is not enough to establish discrimination." *McHenry Cnty.*, 44 F.4th at 594; *see also California*, 921 F.3d at 881 ("[Discrimination] is not implicated when a state merely references or even singles out federal activities in an otherwise innocuous enactment.") and *Illinois*, 796 F. Supp. 3d at 534 (distinction based "on the enforcement context (civil immigration versus criminal law), not government status," is not discrimination).

Doña Ana County does not discriminate against the federal government in choosing not to participate in the INA's voluntary enforcement scheme. Indeed, a finding that the provisions of the SCAR constitute discrimination against the federal government would necessarily imply that a local government *must* assist with the federal government's immigration enforcement efforts, a finding at odds with the INA's voluntary agreement provisions and the anti-commandeering doctrine. *See United States v. California*, 921 F.3d at 891. For the foregoing reasons, Plaintiff's discrimination claim in Count III fails and must be dismissed.

### C. The SCAR's Provisions Related to the Gathering and Dissemination of Information Regarding Immigration Status are not Expressly Preempted.

Finally, in Count V, Plaintiff alleges express preemption of certain provisions of the SCAR related to the prohibition of using County resources to gather, maintain, or disseminate information related to immigration status. This challenge fails as well.

The SCAR explicitly precludes the use of County funds or resources "to gather, transmit or disseminate information regarding the immigration status of individuals in Doña Ana County"

unless required by federal or state statute, regulation, or court decision. SCAR ¶ 2. That prohibition

includes "requesting information about, transmitting or disseminating information regarding the

immigration status of any individual, or conditioning the provision of services or benefits by Doña

Ana County upon immigration status," *id.* ¶ 2(A), or "[i]ncluding on any application, questionnaire

or interview form used in relation to benefits, services or opportunities provided by Doña Ana

County, any question regarding immigration status." *Id.* ¶ 2(B).

Plaintiff contends that these provisions run afoul of two provisions of the INA: 8 U.S.C.

§§ 1373(a) and 1644.  Section 1373(a) provides:

> Notwithstanding any other provision of Federal, State, or local law,
> a Federal, State, or local government entity or official may not
> prohibit, or in any way restrict, any government entity or official
> from sending to, or receiving from, the Immigration and
> Naturalization Service information regarding the citizenship or
> immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373(a); *see also* 8 U.S.C. § 1644 ("[N]o State or local government entity may

be prohibited, or in any way restricted, from sending to or receiving from the Immigration

and Naturalization Service information regarding the immigration status, lawful or unlawful,

of an alien in the United States."). These provisions do not expressly preempt the challenged

portions of the SCAR.

Any contention that the cited provisions of the SCAR are expressly preempted by 8 U.S.C.

§§ 1373 or 1644 fails for three separate reasons. First, express preemption cannot apply because

the INA provisions at issue do not qualify as preemption provisions. Second, §§ 1373 and 1644

cannot preempt the provisions because, as several courts have held, they are unconstitutional under

the Tenth Amendment. Third, even if §§ 1373 and 1644 could exert preemptive force and were

valid, they would not preempt the resolution's provisions because the provisions are consistent

with the statute.

1.  Sections 1373 and 1644 lack preemptive force because they do not regulate private actors.

Plaintiff's express preemption claim fails at the outset because it runs directly into the brick wall built by *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018). *Murphy* explicitly recognizes that "every form of preemption is based on a federal law that regulates the conduct of *private actors*, not the States." 584 U.S. at 479 (emphasis added). "In order for a federal statutory provision to preempt state law, it . . . 'must be best read as one that regulates private actors.'" *Colorado*, 455 F. Supp. 3d at 1058 (quoting *Murphy*, 584 U.S. at 477)); *see also Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (preemption occurs where "federal law 'imposes restrictions or confers rights on private actors' and 'a state law confers rights or imposes restrictions that conflict with the federal law'").

As many courts have held, 8 U.S.C. §§ 1373 and 1644 "regulate only state and local governments and do not, in any way, regulate private actors." *Cnty. of Ocean*, 475 F. Supp. 3d at 372; *see also Colorado*, 455 F. Supp. 3d at 1059 ("By their plain terms, [sections 1373 and 1644] affect state and local government entities and officials; they do not regulate private actors as *Murphy* requires for preemption."); *Ocean Cnty. Bd. of Commr's v. Attorney General of New Jersey*, 8 F.4th 176, 182 ("Our conclusion that neither § 1373 nor § 1644 regulates private actors is fatal to Appellant's argument that they preempt the Directive"); *Illinois*, 796 F.Supp.3d at 521 ("As a provision that addresses information sharing between government actors, § 1373 doesn't create or restrict the rights of any private actor"); *Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019) ("In particular, the provisions create no rights or restrictions applicable to *private* actors; rather, by their terms, Sections 1373 and 1644 affect only state and local government 'entit[ies]' and 'official[s].'"); *City of Phila. v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Pa. 2018), aff'd in part, vacated in part sub nom. *City of Philadelphia v. Attorney General*, 916 F.3d 276 (3d Cir.

19

2019) (Section 1373 "can[not] be best read as regulating private actors" because it instead "regulate[s] state and local government entities and officials"). Because §§ 1373 and 1644 regulate state and local entities rather than private actors, they cannot form the basis for a preemption claim and the inquiry should end there with the dismissal of Count V.

    2. Sections 1373 and 1644 cannot preempt the SCAR because they are unconstitutional under the Tenth Amendment.

Even if the Court were to overlook *Murphy*'s limitation on preemption, Sections 1373 and 1644 also cannot preempt the challenged provisions of the SCAR because they violate the Tenth Amendment. As set forth above, the Tenth Amendment's anticommandeering principle is the "expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States." *Murphy*, 584 U.S. at 470. The federal government may not "compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz*, 521 U.S. at 925. That is precisely what §§ 1373 and 1644 attempt to do. Sections 1373 and 1644 both purport to issue orders directly to state and local governments, explicitly proscribing certain types of legislation and controlling regulations on immigration-related information sharing, which has the effect of conscripting them into assisting with federal immigration enforcement. But "if the State, County, and City cannot control whether and how their employees share information with the federal government, they cannot affirmatively opt-out of enforcing federal immigration laws." *Illinois*, 796 F.Supp.3d at 523.

As "one of the Constitution's structural protections of liberty," the anticommandeering principle "promotes political accountability" and "prevents Congress from shifting the costs of regulation to the States." *Murphy*, 584 U.S. at 473-74 (quoting *Printz*, 521 U.S. at 921). By purporting to regulate state and local legislative activities, these statutory provisions infringe upon

20

state and local sovereignty, undermining the "healthy balance of power between the States and Federal Government [that reduces] the risk of tyranny and abuse from either front." *Id.* at 473. And by forcing local governments to assist with federal immigration enforcement, these statutes obfuscate who is responsible for local policy, reducing political accountability and causing confusion among voters, and forcing localities to act against the values of their citizens. *See id.* Further, they effectively shift the costs of implementing Plaintiff's desired programs by demanding that states and localities help administer them. "The power of the Federal Government would be augmented immeasurably if it were able to impress into its service–and at no cost to itself, the [employees] of the 50 States." *Printz*, 521 U.S. at 922. Each of these outcomes is antithetical to anti-commandeering principles.

With respect to Sections 1373 and 1644 in particular, their "negative proscription" commands state and local governments "to govern according to Congress'[s] instructions," in violation of the anticommandeering principle. *Illinois*, 796 F. Supp. 3d at 523-24 (quoting *New York v. United States*, 505 U.S. 144, 162 (1992)); *see also Murphy*, 584 U.S. at 481. For this reason, numerous courts have held that 8 U.S.C. §§ 1373 and 1644, and the conditions and certifications based thereon, violate the Tenth Amendment. *See Colorado*, 455 F. Supp. 3d at 1045 (citing cases); *see also, Oregon*, 406 F. Supp. 3d at 971; *City of Phila.*, 309 F. Supp. 3d at 329–30; *Ocean Cnty.*, 8 F.4th at 182 n.4. The constraints on local lawmaking in §§ 1373 and 1644 therefore do not comport with the Tenth Amendment, and cannot constitutionally form the basis for preemption of the challenged provisions of the SCAR. Count V must be dismissed on this basis as well.

   3. Sections 1373 and 1644 cannot preempt the SCAR because it is subject to a savings clause.

Even if §§ 1373 and 1644 could exert preemptive force, which they cannot, and were constitutional, which they are not, they still would not expressly preempt the challenged provisions

21

of the SCAR, because it requires compliance with federal law. Section 2 of the SCAR, which precludes the use of County funds or resources for the gathering, transmission, or dissemination of information regarding immigration status of individuals in Doña Ana County, explicitly suspends this prohibition if such information sharing is "required by federal or state statute, regulation, or court decision." SCAR § 2. Similarly, the SCAR prohibits using County resources to request information about, transmit or disseminate information regarding the immigration status of any individual, or conditioning the provision of services or benefits by Doña Ana County upon immigration status, "*except as required by federal or state statute or regulation, or court decision.*" SCAR § 2(A) (emphasis added).

By definition these sections of the SCAR could not conflict with §§ 1373 and 1644 to the extent those statutes were valid and applicable to the SCAR, because the savings clause would then require compliance with them and therefore preclude a conflict. This explicit deference to federal law removes the SCAR from the purview of any express preemption in §§ 1373 and 1644. *See, e.g.*, *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022) ("Although [the challenged state statute] prohibits disclosing immigration-status information, that provision is subject to a savings clause requiring compliance with federal law" and, therefore, complies with Section 1373; *Illinois*, 796 F.Supp.3d at 519 n.13. Therefore, while County Defendants vigorously contest whether these statutes can have a preemptive effect or are constitutional, because of the savings clause these sections of the SCAR cannot be expressly preempted based on a facial challenge regardless of the answers to those other questions. Count V must be dismissed on this basis as well.

**D.      The FAC Does not Address the SCAR's Severability Clause.**

Plaintiff cannot carry its facial burden as to provisions it never addresses. Section 1 directs the internal distribution of written guidance. Section 2(B) removes immigration-status questions

from County forms that federal law does not require. Sections 2(D) through 2(I) prevent unauthorized use of County property as an immigration staging area and preserve the County's discretion over its own permits, contracts, and agreements. Section 3 is a designation. Section 4(C) provides for voluntary outreach only. Section 5 governs County employee discipline alone. And Section 6 disclaims the creation of any new right giving rise to monetary liability. Each has obvious lawful applications, and every operative provision yields where federal or state law requires a different result. Those applications defeat facial invalidation. *Salerno*, 481 U.S. at 745; *Rahimi*, 602 U.S. at 693; *Moody*, 603 U.S. at 723-26.

The challenge to Section 4 is especially premature. Section 4 directs the County to develop and implement policies, and the FAC identifies no such policy and no application of one. A court cannot presume that future implementation will disregard the Resolution's text, its express deference to federal and state law, or constitutional limits. The proper construction is the lawful one the text supplies.

The FAC seeks to invalidate the SCAR in full, making no distinction between the provisions it has expressly challenged and those it has not discussed. County Defendants assert that Plaintiff has failed to state a claim regarding any of the provisions in the SCAR. However, even if one or more provisions were found to be unenforceable, the remedy would not be wholesale invalidation. The SCAR contains an express severability clause establishing the Board's intent that each provision stands independently, such that if any portion is found to be invalid the remainder of the Resolution continues in full effect. SCAR § 7. Therefore, to the extent the Court finds that Plaintiff has stated a claim with respect to any of the SCAR's provisions, any relief must be limited in accordance with its severability clause.

23

**E.      Scott Andrews Should Be Dismissed and Terminated as a Named Party.**

Plaintiff sues Mr. Andrews solely in his official capacity as County Manager. An official-capacity claim is a claim against the governmental entity itself, and it is redundant where, as here, the entity is also a defendant. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Courts have dismissed duplicative official-capacity defendants in Plaintiff's recent sanctuary suits for precisely that reason. *See Illinois*, 796 F. Supp. 3d at 511-12.

Mr. Andrews also no longer serves as County Manager. Rule 25(d) automatically substitutes the current officeholder in an official-capacity action and provides that later proceedings should be in the substituted party's name. Fed. R. Civ. P. 25(d). No claim therefore remains against Mr. Andrews personally, and retaining the office as a separate defendant adds nothing, because any injunction against the County would bind its officers, employees, and agents who receive actual notice of it. Fed. R. Civ. P. 65(d)(2). *See also* SCAR § 2 (expressly providing that its provisions are inoperative in the face of an adverse court decision such that any County officer would be bound by that decision. The Court should dismiss the claims against Mr. Andrews and terminate him as a named party.

**CONCLUSION**

The First Amended Complaint does not plausibly allege that the SCAR conflicts with federal law, regulates or discriminates against the Federal Government, or is expressly preempted by 8 U.S.C. §§ 1373 or 1644. Because Plaintiff has failed to state a claim upon which relief can be granted, the County Defendants respectfully request that the Court dismiss all claims against them with prejudice pursuant to Rule 12(b)(6), terminate Scott Andrews as a named party, and grant such other and further relief as the Court deems just and proper.

24

Respectfully submitted,

NEW MEXICO ASSOCIATION OF COUNTIES

*/s/ David Roman*
BRANDON HUSS
DAVID ROMAN
BREE BARNETT
444 Galisteo St
Santa Fe, NM 87501
(505) 820-8116
bhuss@nmcounties.org
droman@nmcounties.org
bbarnett@nmcounties.org
*Attorneys for County Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2026, I filed the foregoing pleading electronically through the CM/ECF system, which caused all counsel of record to be served electronically, as more fully reflected on the Notice of Electronic Filing.

/s/ *David Roman*
David Roman

25