**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>vs.<br><br>THE STATE OF NEW MEXICO;<br>MICHELLE LUJAN GRISHAM, in her<br>Official Capacity as Governor of the State<br>of New Mexico; RAÚL TORREZ, in his<br>Official Capacity as Attorney General of<br>the State of New Mexico; THE CITY OF<br>ALBUQUERQUE; TIMOTHY KELLER,<br>in his Official Capacity as the Mayor of the<br>City of Albuquerque; BERNALILLO<br>COUNTY; CINDY CHAVEZ in her<br>Official Capacity as Manager of  Bernalillo<br>County; DOÑA ANA  COUNTY; SCOTT<br>ANDREWS, in his Official Capacity as<br>Manager of Doña Ana County,<br><br>       Defendant. | No. 1:26-cv-01471-KG-LF |

**BERNALILLO COUNTY[1] AND CINDY CHAVEZ'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC. 42]**

The Court already has received substantial briefing on the law relevant to determining

that this case should be dismissed. Doc 49 filed 7/6/2026; Doc. 50 filed 7/6/2026; Doc. 67 filed 1

filed 7/6/2026; Doc. 67 filed 8/3/2026; Doc. 68 filed 8/3/2026; Doc. 69 filed 8/3/2026; Doc. 71

---

[1] Doña Ana County already has contacted the United States to note that a party suing counties in New Mexico properly names the board of county commissioners. Doc. 74 at 1 n.1 (citing NMSA 1978, § 4-46-1 and Fed. R. Civ. P. 17). The same is true of Bernalillo County, which is properly named as the Board of County Commissioners for Bernalillo County. Like Doña Ana, Bernalillo County has not briefed the issue on the understanding that the United States will correct the error while reserving the right to pursue relief if it becomes necessary to do so.

filed 8/3/2026; Doc. 74 filed 8/3/2026.[2] The Court also has the benefit of the ever-growing list of decisions from other federal courts dismissing analogous claims. *See, e.g.,* Doc. 50 at 5 n.1. To avoid needless repetition, Bernalillo County and Cindy Chavez ("the Bernalillo County Defendants") adopt by reference the existing briefing in this case, D.N.M.LR-Civ. 7.1(a), and limit this motion accordingly.

Applying the controlling law to the Bernalillo County Safer Community Places Ordinance (the "Ordinance"), Doc. 42-3, filed 6/22/2026, at 2-3,[3] confirms that the United States has no plausible claim for relief. Federal law does not preempt the Ordinance because they do not conflict, nor has Congress passed any law that reflects the specific purpose of displacing laws like this that are grounded in local police powers. The United States also cannot prevail on its intergovernmental immunity claim because the Ordinance neither regulates nor discriminates against the federal government.

## BACKGROUND

***The Bernalillo County Commission Enacted the Safer Community Places Ordinance to Establish Rules for Its Property and Preserve Constitutional Rights for Individuals Within the County.***

In 2025, Bernalillo County was confronted with growing concerns surrounding constitutional abuses in immigration enforcement nationally and locally. *See, e.g.,* Lindsay Nash, Deportation Arrest Warrants, 73 Stan. L. Rev. 433, 454 (2021) ("The government's own records show that ICE has routinely asserted probable cause in error to detain thousands of U.S. citizens, exposing them to all of the usual harm to person, property, and livelihood that detention

---

[2] Pursuant to D.N.M.LR-Civ. 7.1(a), undersigned counsel contacted opposing counsel to confer and confirmed the motion is opposed.

[3] For consistency, motion citations are based on CM/ECF pagination at the top of each document rather than the parties' pagination.

entails."); *Gamez Lira v. Noem*, No. 1:25-cv-00855-WJ-KK, 2025 WL 2581710 (D.N.M. Sept. 5, 2025) (Johnson, J.) (entering temporary restraining order for immigrant granted Deferred Action for Childhood Arrivals (DACA) status in 2014 and finding likelihood of success on claims that the seven unidentified law enforcement officials who arrested him in his driveway violated his substantive due process rights, procedural due process rights, and Fourth Amendment rights while disregarding their own rules and regulations); José Olivares, *US Citizen Wrongfully Arrested by Border Patrol in Arizona Held for Nearly 10 Days*, The Guardian (Apr. 21, 2025, 11:15 AM), https://www.theguardian.com/us-news/2025/apr/20/us-citizen-jose-hermosillo-border-patrol (detailing arrest of 19-year-old U.S. citizen and New Mexico resident for purportedly traveling "without the proper immigration documents").

Along the way, violence has escalated, including in New Mexico communities. *See, e.g.,* Patrick Lohmann, *Resentment Against Albuquerque 'Deliveristas' May Have Sparked Viral Walmart Ice Arres*t," Source New Mexico(July 11, 2025, 1:37 PM), https://sourcenm.com/2025/07/11/resentment-against-albuquerque-deliveristas-may-have-sparked-viral-walmart-ice-arrest/ (detailing tasing and arrest at Walmart of local resident reportedly in the United States under Temporary Protected Status); Jessie Bowman, *ICE Ramps Up Enforcement in Four Corners*, The Durango Herald (Aug. 19, 2025, 4:16 PM), https://www.durangoherald.com/articles/ice-ramps-up-enforcement-in-four-corners/. And enforcement is now intruding into spaces residents must access for their health, safety, and welfare. *See* New Mexico Immigrant Law Center, *"He Reported Me to ICE": ICE Is Detaining Domestic Violence Survivors*, *https://www.nmilc.org/our-updates/ice-is-detaining-domestic-violence-survivors* (last visited Aug. 10, 2026); Gabe Vasquez, *OPINION: On New Mexico's Border, ICE's Raids Are Making Us Less Safe*, Albuquerque Journal (Nov. 1, 2025, 2:22 PM),

3

https://www.abqjournal.com/opinion/opinion-on-new-mexicos-border-ices-raids-are-making-us-less-safe/2905374; Julianne McShane, *LA's ICE Raids Are Impacting Domestic Violence Shelters*, Mother Jones (June 12, 2025), https://www.motherjones.com/politics/2025/06/la-ice-raids-domestic-violence-shelters/; *see also* American Civil Liberties Union, *Agents of Chaos and Cruelty: How the Trump Administration's National Deportation Policing Force has Attacked American Communities* 20 (2026) ("On the first day of Domestic Violence Awareness Month, federal agents in New Mexico waited in the parking lot of a domestic violence shelter and arrested a mother who was handing off her daughter to her abusive ex-partner. Lawmakers in California and New Mexico also described receiving reports of enforcement actions at domestic violence shelters.") (hereinafter *Agents of Chaos and Cruelty*).

A central area of concern is immigration enforcement involving children and in places that people need to access for matters essential to their health, safety, and welfare. *See, e.g.,* Danielle Prokop, *U.S. Rep Vasquez Demands Answers Over Las Cruces Border Patrol Incident with Students*, Source New Mexico (Feb. 24, 2025, 5:03 PM), https://sourcenm.com/2025/02/24/u-s-rep-vasquez-demands-answers-over-las-cruces-border-patrol-incident-with-students/; *Agents of Chaos and Cruelty*, at 19-25 (listing 86 incidents that occurred at or in the vicinity of what prior administrations described as protected areas or sensitive locations, including 49 on, adjacent to, or near schools and an additional 11 at other locations where children routinely gather).

Bernalillo County has a critical interest and responsibility regarding these issues. The county controls impacted property and holds confidential records for residents, and it is charged with protecting the health, safety and welfare of its residents. Regarding the former, the County is entitled to act as a proprietor in defining the activities permitted in areas it owns or controls.

4

*United States v. New York*, 810 F.Supp. 3d 329, 352-53 (N.D.N.Y. 2025) (*quoting Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 205 (5th Cir. 2024) (footnote omitted)). Regarding the latter, Bernalillo County has broad police powers under state law. Pursuant to NMSA 1978, § 4-37-1:

> All counties are granted the same powers that are granted municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties. Included in this grant of powers to the counties are those powers necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants. The board of county commissioners may make and publish any ordinance to discharge these powers not inconsistent with statutory or constitutional limitations placed on counties.

*Id.*

Exercising this authority, on November 18, 2025, the Bernalillo County Board of County Commissioners adopted Ordinance No. 2025-33, which provides "for Safer Community Places for all Bernalillo County residents." Safer Community Places Ordinance, Doc. 42-3, filed 6/22/2026, at 2-3 ("Ordinance"). The Ordinance addresses concerns related to immigration enforcement activity in three ways:

1. <u>Safer Community Places</u>

The Ordinance identifies resources and spaces that inhabitants of Bernalillo County need to access for their health, safety, and welfare. *Id*. at 3-4. The Commission designated the following as such "Safer Community Places":

    a.  Hospitals and other healthcare facilities;

    b.  Schools;

    c.  Places where children routinely gather, including schools and daycares;

    d.  Designated disaster and emergency response sites;

    e.  County owned or operated facilities;

f.  Community resource centers and direct service providers including legal service providers, homeless shelters, sexual and domestic violence providers, family justice centers, and human trafficking service providers;

g.  Work zones and construction sites on County property and within County rights of way;

h.  Other similar locations whose purpose is to promote the health safety and welfare of residents as determined by the County.

*Id*.

The Ordinance then requires the County to adopt policies "to prohibit a Safer Community Place from providing voluntary consent to law enforcement agents engaged in or supporting immigration from (1) entering non-public areas; or (2) accessing, reviewing or obtaining student or patient records." *Id*. The County also must develop policy and training around private spaces and Fourth Amendment protections, including offering signage and model policy language. *Id.* at 4-5. The Ordinance acknowledges the obligation to comply with valid judicial warrants and exigent circumstance searches. *Id*. It also in no way limits the authority of immigration officials to make lawful arrests or obtain information Congress requires local officials to disclose when they know it. The Ordinance only prohibits Safer Community Places from excusing law enforcement officers from the judicial warrant requirement and other required legal process when engaging in immigration enforcement.

2.  Clear Delineation of Nonpublic Spaces and Plans of Safety

The Ordinance also instructs the County Manager to develop and implement a policy for staff training and posting signage to clearly identify non-public spaces within County buildings and County funded facilities that are subject to the warrant requirement. *Id*. at 4-5. For other

6

facilities, the Ordinance requires the County to "conduct outreach and work with building and location administrators to develop policy and training around private spaces and fourth amendment protections." *Id*. at 5. The Ordinance specifies that the County will offer signage and model policy language to help distinguish between public areas and non-public areas subject to the constitutional warrant requirement.

Next, the Ordinance instructs the County Manager to develop policies: (1) requiring businesses to display signs designating private spaces and for those with five or more employees, develop a safety plan "to protect workers, customers, and other individuals present at the place of business from unwanted intrusion by law enforcement into the private spaces of a place of business." *Id*.

### 3.  Employee Notification Requirements

The Ordinance requires notice to employees in two circumstances. Related to I-9 inspections, employers must give notice within 24 hours to each current employee of inspection "by a government agency of I-9 Employment Eligibility forms or other employment records, except as otherwise required by federal law." *Id.* at 4. The notice must include identifying which agency conducted the inspection, the date the employer received notice of the inspection, the scope of the inspection (to the extent the employer knows); a web address to a site that provides information provided by community organization(s) related to immigrant and refugee rights or workers' rights; and a copy of the inspecting agency's notice of inspection. *Id*.

The Ordinance further requires the employer to take steps to address any potential problems with an employee's I-9 documentation. That includes requiring notifying employees of any government agency determination that the documents the employer has do not establish work authorization in the United States, and notice of a period to cure any deficiency and meet

7

with the employer for that purpose. *Id*. Finally, the Ordinance provides for notice to employees within the 24 hours after a law enforcement officer "engaging in or supporting immigration enforcement" has taken action other than for I-9 inspections at a workplace. *Id*. at 7-8.

The Ordinance concludes with a standard severability clause specifying that if a court finds any provision of the Ordinance invalid or unenforceable, the remaining provisions of the ordinance remain enforceable. *Id*. at 8. In implementing the Ordinance, the County has provided public guidance regarding its scope. That includes specifying that the Ordinance does not contemplate employers defying federal law in any way:

> Q. Does Ordinance 2025-33 require employers to defy federal requirements or officers?
>
> A. No. Compliance with Ordinance 2025-33 does not require any employer to violate federal law, or to interfere with the lawful conduct of law enforcement officers in any fashion. At most, it may require an employer to decline a federal agent's request for **voluntary** cooperation when unsupported by the necessary judicial authorization. The ordinance applies only "except as otherwise required by federal law" and does not restrict or limit an employer's compliance with any memorandum of understanding governing participation in the federal E-Verify program.

Bernalillo    County    Safer    Community    Places,    Bernalillo    County,
https://www.bernco.gov/county-manager/safer-community-places/ (last visited Aug. 10, 2026). The United States challenges only the 24-hour notice provision within this section.

**ARGUMENT**

## I.    LEGAL STANDARD

"To survive a motion to dismiss, a plaintiff must plead facts sufficient to state a claim to relief that is plausible on its face." *Albers v. Bd. of Cnty. Com'rs*, 771 F.3d 697, 700(10th Cir. 2014) (internal quotation marks and citation omitted). In reviewing a motion to dismiss, the Court "assume[s] that all well-pled factual allegations in the complaint are true and draw[s] all

8

reasonable inferences in the plaintiff's favor." *Spinelli v. Coherus Biosciences, Inc.*, 167 F.4th 1274, 1279 (10th Cir. 2026). Legal conclusions need not be accepted as true. *Id.* at 1280. "The complaint must show that there is more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quotation marks omitted). Moreover, the ordinance at issue here includes a severability clause, Doc. 42-3 at 8, so the United States must establish a plausible claim provision-by-provision.

## II.    THE ORDINANCE IS NOT PREEMPTED.

The United States claims the Ordinance is preempted because it conflicts with federal law. Doc. 42, ¶¶ 164–73.[4] Dismissal of this claim is appropriate because the required conflict does not exist. The Ordinance does not render it impossible for a private party to comply with both state and federal law, and it does not obstruct "the accomplishment and execution of the full purposes and objectives of Congress." Doc. 49 at 11-12; Doc. 50 at 11-17. Instead, the Ordinance withholds voluntary cooperation by Bernalillo County as Congress contemplated, and the portions of the Ordinance that address private parties involve the exercise of local police power that does nothing more than preserve constitutional safeguards against unreasonable searches and seizures. That is true giving the federal immigration laws their ordinary meaning, and the United States' argument further fails to overcome the presumption against federal displacement of such local matters. *Arizona v. United States*, 567 U.S. 387, 400 (2012); *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Moreover, as other defendants have correctly emphasized, the

---

[4] The United States' subsequent briefing on other defendants' motions to dismiss confirms as much. See, e.g., Doc. 64 at 8-17.

United States' overbroad conception of obstacle preemption violates the Tenth Amendment's anticommandeering principle. Doc. 49 at 15-16; Doc. 50 at 17-19.

The United States challenges two aspects of the Bernalillo County Safer Community Places Ordinance on preemption grounds: (1) the provision prohibiting Safer Community Places from granting consent to search nonpublic areas and student or patient records absent a valid judicial warrant; and (2) the requirement for employers to provide notice within 24 hours after immigration enforcement presence at a place of work. Doc. 42, ¶ 94-96. In trying to create a conflict between the Ordinance and federal law, the complaint mischaracterizes both. Properly understood, the Ordinance is a straightforward exercise of local police powers, and no provision of federal immigration law reflects Congress's "clear and manifest" purpose to displace that power. *Arizona v. United States*, 567 U.S. 387, 400 (2012); *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

### A. The United States Mischaracterizes the Safer Community Places Provisions of the Ordinance.

#### 1. *The United States substantially overstates the scope of the Ordinance.*

The United States alleges that the Ordinance "prevent[s] federal immigration authorities from entering, accessing, or using certain public and private properties for the purposes of immigration enforcement, including courthouses." Doc. 42, ¶ 113. But the Ordinance only prohibits Safer Community Places from consenting to requests from law enforcement to access to nonpublic spaces without a judicial warrant and in the absence of exigent circumstances. Doc. 42-3 at 4.  The same is true of the Ordinance provision regarding student and patient records. *Id*. Additionally, the Ordinance specifies that it does not preclude production of student or patient records pursuant to "a valid judicial subpoena or judicial order compelling production" or access to nonpublic spaces in cases involving exigent circumstances. Doc. 42-3 at 4.

10

2. *The United States substantially overstates federal immigration law—immigration officials are not authorized use of administrative warrants to access the nonpublic spaces or confidential records the Ordinance covers.*

The complaint then also overstates what Congress actually has authorized law enforcement to do when engaged in immigration enforcement. No statute or regulation purports to authorize searches of the nonpublic areas the Ordinance covers without a valid judicial warrant, nor does the law grant law enforcement special access to confidential student and patient records. If a statute or regulation tried to create such a power, it would run headlong into the Fourth Amendment.

Paragraph 115 of the complaint suggests that: (1) "Congress authorized the Federal Government to use administrative warrants and similar requests to obtain access to aliens and related information while in state custody"; and (2) "Congress specifically authorized the use of non-judicial warrants, subpoenas, and orders." Doc. 42, ¶ 115. According to the United States, the Ordinance therefore conflicts with federal law by "require[ing] judicial warrants to access property when Congress authorized the use of administrative warrants." Doc. 42, ¶ 123.

But there is no federal law that even purports to authorize the use of administrative rather than judicial warrants to search the nonpublic spaces or access the confidential records the Ordinance covers. The statutes and regulation the United States relies on certainly do not support its position. *See* 8 U.S.C. § 1103(a)(3) (providing that the Secretary of Homeland Security "shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter"); 8 U.S.C. §§ 1225(d)(4) (authorizing immigration officials to **subpoena** "books, papers, and documents" and to then request a United States district judge to enforce a subpoena where necessary); 8 U.S.C. § 1226(a) (authorizing immigration **arrests** "[o]n a warrant issued by the Attorney General"); 8 U.S.C. § 1231(a) (addressing the

11

detention, release and removal of aliens with no reference to searches or access to records); 8 U.S.C. § 1357(a) (arrest, not search, authority); 8 U.S.C. § 1357(c) (allowing warrantless searches only "of the person, and of the personal effects in the possession of any person seeking admission to the United States" upon reasonable cause to suspect ground exist to deny admission); 8 U.S.C. § 1357(d) (providing for the detention of "aliens for violation of controlled substance laws"), 8 C.F.R. § 287.7(a) (Department of Homeland Security regulation governing immigration detainers). The Ordinance does not conflict with any of these provisions of federal law.

In any event, a statute or regulation that claimed to grant authority for law enforcement to use self-issued administrative warrants to conduct searches of nonpublic spaces or access confidential records would violate the Fourth Amendment to the United States Constitution and its state constitutional analogue, Article II, Section 10 of the New Mexico Constitution. Both protect against unreasonable searches and seizures. U.S. Const. amend. IV (guaranteeing "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"); N.M. Const. article II, § 10 ("The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures…."). Both render presumptively unreasonable any search without a valid judicial warrant approved by a neutral magistrate for any space where people have a reasonable expectation of privacy (like in the nonpublic spaces the Ordinance covers). *State v. Rowell*, 2008-NMSC-041, ¶ 10, 188 P.3d 95 ("Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable,' subject only to well-delineated exceptions.") (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Approval by a detached, neutral magistrate is fundamental to the warrant requirement:

> The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. As we have often explained, the placement of this checkpoint between the Government and the citizen implicitly acknowledges that an "officer engaged in the often competitive enterprise of ferreting out crime," *Johnson v. United States, supra*, 333 U.S. at 14, 68 S.Ct., at 369, may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty and the privacy of his home. *Coolidge v. New Hampshire, supra*, 403 U.S., at 449-451; *McDonald v. United States*, 335 U.S. 451, 455-456 (1948).

*Steagald v. United States*, 451 U.S. 204, 212-13 (1981) (Marshall, J.).

And a valid judicial ***arrest*** warrant does not authorize searches of any Safer Community Place under the Ordinance. *Id.* As the Supreme Court has cautioned, "while an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ." *Id.* From the perspective of those who own or control property, a warrantless search supported only by a judicial arrest warrant for a third-party is no more reasonable than a search without any warrant at all. *Id.* More specifically, courts have ruled that the constitution prohibits using administrative arrest or removal warrants to enter private spaces. *See, e.g., Kidd v. Mayorkas*, 734 F.Supp.3d 967, 979-80 (C.D. Cal. 2024) (recognizing that, absent consent or a judicial warrant, ICE's entry into private spaces is presumptively unreasonable because officers who sign administrative warrants belong to the executive branch, not judicial branch, and cannot be expected to bring a neutral eye to their own agency's investigations).

The United States also does not allege in the complaint any provision of federal law that grants law enforcement a right to access student or patient records without a warrant or a subpoena subject to judicial enforcement. As the City of Albuquerque Defendants correctly note,

13

the protections under the Ordinance for student and patient records also are supported by federal statutes (HIPAA and FERPA) and existing New Mexico law. Doc. 50 at 20-21; Doc. 71 at 10.

There is no conflict between the Ordinance and federal law, and the United States' preemption argument therefore fails.

### B. The United States Mischaracterizes the Employee Notification Provision of the Ordinance.

The United States does not identify any federal statute or regulation that conflicts with the employee notice requirement of the Ordinance. Instead, the United States tries to distort the criminal statute prohibiting "harboring" aliens to reach the Ordinance's notice provision. In doing so, the United States ignores: (1) the fact that the individuals entitled to notice under the Ordinance were required to prove their legal authorization to work in the United States in the first place; and (2) settled precedent that forecloses criminalizing merely complying with the Ordinance.

On the first point, 8 U.S.C. § 1324a(b) requires employers to verify employment authorization before hiring any person. Bernalillo County adheres to that requirement in hiring, and it reasonably expects that other employers in the county do the same. There is no basis for the United States' allegation that that the Ordinance "require[s] businesses to tip off illegal aliens of ongoing immigration law enforcement activities, which requirement has no legitimate purpose other than to harbor and conceal these aliens from detection by immigration authorities by telling these aliens to avoid coming into work to avoid being subject to detention by federal authorities." Doc. 42, ¶ 14. Any employer that is knowingly "tipping off" anyone subject to immigration enforcement already has violated federal law.

Regarding the second, related point, the United States' invocation of the harboring statute ignores the elements of that crime, including mens rea. Consistent with other jurisdictions, the

14

Tenth Circuit has found that the harboring statute, 8 U.S.C. § 1324(a)(1)(A)(iii), "requires that a defendant know or act in reckless disregard of the fact that an individual is an illegal alien." *United States v. Kalu*, 791 F.3d 1194, 1208-1210, n.18 (10th Cir. 2015). As such, only an employer who already is knowingly employing someone not authorized to work in the United States and provides notice of immigration enforcement to that employee for purposes of harboring them to avoid detection could subject themselves to criminal exposure. Employers who simply comply with the Ordinance as a law of general applicability never could run afoul of the harboring law. *See, e.g., Kearns v. Cuomo*, 981 F.3d 200, 209 (2d Cir. 2020) (finding speculative a state employee's claim that complying with federal and state law governing issuance of driver's licenses could subject him to prosecution under 8 U.S.C. § 1324).

The worker notification provisions of the Ordinance widely protect employees entitled to work in the United States. This never has been a "show your papers" country, but the Ordinance was passed in the wake of documented instances where citizens and others entitled to work in the United States were arrested, detained, and in some instances deported. It is reasonable for the County to provide notice after immigration enforcement activity occurs so that people can take reasonable, lawful precautions to avoid being wrongfully swept up. This can be as simple as employees ensuring their work authorization paperwork is correct or carrying identification with them to avoid life-changing wrongful detentions or deportations. In its misdirected pursuit of people to deport, the United States ignores the impact immigration enforcement has on communities at large. Bernalillo County is not required to adopt the same blinkered view of the problem. Employees are entitled to know if the type of dangerous sweeps that have occurred elsewhere took place at their work—a location where most people spend substantial portions of their lives, and have a reasonable expectation of safety. The United States' claim that the

15

Bernalillo County Defendants intend the worker notification provisions of the Ordinance as "tip offs" is legally unfounded and unsupported by any plausible allegations in the complaint.

III.    **THE ORDINANCE IS NOT BARRED BY INTERGOVERNMENTAL IMMUNITY.**

The United States has not stated a claim based on intergovernmental immunity because the Ordinance does not discriminate against or directly regulate the federal government. *See United States v. Washington*, 596 U.S. 832, 838 (2022).

### A.  The United States Again Mischaracterizes the Ordinance.

As with preemption, in trying to create an intergovernmental immunity claim, the United States misstates what the Ordinance does and does not do. According to the complaint, the Ordinance first violates intergovernmental immunity because it "seeks to limit and control the real property available to the Federal Government to implement federal immigration law." Doc. 42, ¶¶ 122, 125. In support, the complaint cites Sections 2-4 of the Ordinance. *Id.* But those provisions merely designate the locations that are treated as Safer Community Places, prohibit the people in charge of such spaces from giving consent to search *nonpublic* areas or access student or patient records. Doc. 42-3 at 3-5 Outside designated Safer Community Places, the Ordinance simply calls on the County Manager to develop policies to delineate private spaces from public spaces and, for businesses with five or more employees, require adoption of "a safety plan…to protect workers, customers, and other individuals present at the place of business from unwanted intrusion by law enforcement into private spaces of a place of business." Doc. 42-3 at 3-5.

The complaint next alleges the Ordinance "control[s] the personnel available to the Federal Government to enforce federal immigration law." Doc. 42, ¶ 122. Here again, the complaint cites the provisions related to searches of nonpublic areas within Safer Community

Places and confidential records Safer Community Places hold. *Id.* Requiring adherence to the presumptive constitutional requirement of a warrant in county-controlled property and at locations county residents rely on for essential services does not deprive the federal government of any personnel, let alone personnel they are entitled to conscript.

### A.  The Ordinance does not discriminate against the federal government.

As the State Defendants and City of Albuquerque Defendants correctly argue, immigration enforcement is "an exclusively federal domain," so there is no comparator on which a claim that the ordinances or statutes at issue discriminate against the federal government can be based. *See, e.g.,* Doc. 67 at 12-14 (citing *McHenry County v. Raoul*, 44 F.4th 581, 594 (7th Cir. 2022)); Doc. 71 at 12-14. That is fatal to the United States' federal discrimination claim. *Id*. Moreover, the United States' sweeping interpretation of the anti-discrimination doctrine is itself unconstitutional under the Tenth Amendment's anticommandeering doctrine. Doc. 67 at 14 (citing *Murphy v. NCAA*, 584 U.S. 453, 470 (2018)); Doc. 71 at 12.

The Ordinance also is directed to a specific problem unique to immigration enforcement in its current form. The distinctive problem at issue justifies Bernalillo County's decision to limit the Ordinance to that subject. That is true without regard to the status (federal, state, or local) of officers performing immigration enforcement operations. In fact, it often is not possible for those encountering such officers to determine who they work for given the pervasive efforts to obscure these officers' identities. According to the United States, the Bernalillo County Defendants are constitutionally bound to ignore the reality that other state and federal law enforcement (criminal and civil) have not created the same problems the Ordinance seeks to mitigate. Doc. 42, ¶ 131-32 (claiming the Ordinance discriminates by: (1) "requiring businesses to notify aliens of federal immigration operations, while allowing other law enforcement operations to proceed without any notice," and "through access restrictions to property").

### B. The Ordinance does not regulate the federal government.

The City of Albuquerque Defendants succinctly capture the defect in the United States'

claim that the Ordinance regulates the federal government:

> A direct regulation "places a prohibition on the Federal Government." *McHenry Cnty,* 44 F.4th at 592. The Ordinance places none. It governs only City actors and local entities: it directs City departments to secure City-owned property, bars City employees from approving permits for immigration-enforcement use of City resources, directs designated locations to withhold voluntary consent, and requires employers to notify their workers of enforcement activity. §§ 5-1-5(B), 13-17-4(A), 13-17-6. No provision tells a federal officer what to do.
>
> Courts have repeatedly rejected the attempt to recast such internal resource decisions as regulation of the United States. *See McHenry Cnty.*, 44 F.4th at 593 (no direct regulation where the law "regulate[d] only State and local entities . . . not the federal government"); *United States v. New York,* 810 F. Supp. 3d 329, 352 (N.D.N.Y. 2025) ("New York is not attempting to regulate federal agents."); *Illinois*, 796 F. Supp. 3d at 535; *Cnty. of Ocean*, 475 F. Supp. 3d at 385.

Doc. 50 at 24-25; *see also* Doc. 49 at 17-19. The Ordinance imposes no obligation on the federal

government, and the United States' position would again trigger the anticommandeering problem

with its federal discrimination argument. Doc. 49 at 15.

## IV.   THE UNITED STATES' FACIAL CHALLENGE FAILS BECAUSE THE ORDINANCE IS VALID IN EACH OF ITS CORE APPLICATIONS.

The other local government defendants are right in noting that the United States' decision

to bring a facial challenge creates another dispositive problem with the complaint. *See* Doc. 50 at

23-24. The United States cannot show that either the Ordinance as a whole or even any provision

the United States challenges is invalid in every circumstance. *Id*. The Bernalillo County

Defendants have set out above why the Ordinance generally defeats the United States'

challenges, and that, at a minimum, is adequate to show there are valid applications.

## V.      CINDY CHAVEZ IS NOT A PROPER DEFENDANT.

The United States needlessly included official-capacity claims against local officials. Cindy Chavez, the Bernalillo County Manager, is no different. The Court should dismiss her from the case because the claims against her are duplicative. Doc. 50 at 26; Doc. 74 at 24. In response to this issue, the United States has justified naming individuals on the theory that they have specific enforcement obligations under the various challenged laws. But the Ordinance's only references to Ms. Chavez relate to adopting policies and implementing matters internally within the community. She is not charged with enforcement, nor does the Ordinance impose penalties of any kind.

Respectfully submitted,

PEIFER, HANSON, MULLINS & BAKER, P.A.

By:   */s/Mark T. Baker*
         Mark T. Baker
Post Office Box 25245
Albuquerque, NM  87125-5245
Tel:     505-247-4800
Email: mbaker@periferlaw.com

*Attorneys for Defendants Board of County Commissioners for Bernalillo County and Cindy Chavez*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of August 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

PEIFER, HANSON & MULLINS, P.A.

*/s/Mark T. Baker*
　　Mark T. Baker

20