**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE UNITED STATES OF AMERICA,

*Plaintiff*,

v.

THE STATE OF NEW MEXICO; MICHELLE LUJAN GRISHAM, in her Official Capacity as Governor of the State of New Mexico; RAÚL TORREZ, in his Official Capacity as Attorney General of the State of New Mexico; CITY OF ALBUQUERQUE; TIMOTHY KELLER, in his Official Capacity as Mayor of the City of Albuquerque, BERNALILLO COUNTY; CINDY CHAVEZ, in her Official Capacity as Manager of Bernalillo County; DONA AÑA COUNTY; SCOTT ANDREWS, in his Official Capacity as Manager of Dona Aña County,

*Defendants*.

THE STATE OF NEW MEXICO ex rel. RAÚL TORREZ, Attorney General of the State of New Mexico,

*Defendant-Counterclaim Plaintiff*

v.

THE UNITED STATES OF AMERICA,

*Plaintiff-Counterclaim Defendant*

and

DEPARTMENT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT, and BOARD OF COUNTY COMMISSIONERS FOR OTERO COUNTY

*Counterclaim Defendants*.

Case No.: 1:26-cv-1471-KG-LF
The Honorable Kenneth J. Gonzales

**ANSWER AND COUNTERCLAIMS**

## ANSWER

Defendants New Mexico and Attorney General Raúl Torrez, in answer to the allegations in the First Amended Complaint, Doc. 42 (June 22, 2026), filed by Plaintiff United States, state the following subject to and without waiving the pending motion to dismiss, and expressly preserving all defenses and argument set forth therein.

### Preliminary Statement

1. In response to Paragraph 1, Defendants admit that, on January 20, 2025, President Donald J. Trump issued Proclamation 10,886, entitled *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327, 8327. Defendants admit that Proclamation 10,886 states that the President enacted it due to a "national emergency [that] exists at the southern border of the United States," and the "illegal entry of aliens." Defendants admit that, on the same day, President Trump issued Executive Order 14,159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443, 8443, which states that it was enacted due to "significant threats to national security and public safety," the "committing [of] vile and heinous acts against innocent Americans," and to "[e]nforc[e] our Nation's immigration laws." Defendants deny the remaining allegations.

2. In response to Paragraph 2, Defendants admit the existence of the cited laws, cases, and the accuracy of the quoted text. Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations.

3. In response to Paragraph 3, Defendants admit that Congress, through 8 U.S.C. § 1357(g), has authorized the Federal government to enter into voluntary agreements with local and state officials that allow for local and state officials to be trained and carry out some federal immigration activities. Defendants admit that 8 U.S.C. §§ 1103(a)(11)(B) and 1231(g) allow the Federal Government to enter into agreements with state and local officials to detain certain immigrants. Defendants admit that local governments and law enforcement agencies have entered into agreements

under the provisions described above for decades. Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations.

4. In response to Paragraph 4, Defendants admit the existence of Executive Order 14,287. Defendants deny that they "seek to intentionally obstruct federal law enforcement and thwart the constitutional obligation of the President" and that their actions are at the "expense of the American people." Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations.

5. In response to Paragraph 5, Defendants admit that on February 5, 2026, New Mexico Governor Michelle Lujan Grisham signed House Bill 9, entitled the "Immigrant Safety Act" (HB9), and that it took effect on May 20, 2026. Defendants admit that HB9's provisions apply to "public bod[ies]" and that its terms include prohibitions on agreements "to detain individuals for federal civil immigration violations, including [] intergovernmental services agreement[s] to detain individuals for civil immigration violations," "to investigate, apprehend, detain or transport individuals pursuant to 8 U.S.C. Section 1357(g) or 8 C.F.R. Section 287.7," and to "deputize[] officers, employees or agents of the public body to perform a function of an immigration officer in relation to the investigation, apprehension, detention or transportation of noncitizens in the United States or the removal of noncitizens from the United States." N.M. Stat. Ann § 13-9-3(A), -4(A) to (B). HB9 includes a section stating, "[a] public body shall not sell, trade, lease or otherwise dispose of any real property to be used for the detention of individuals for federal civil immigration violations." § 13-9-3(C). Defendants deny the remaining allegations.

6. In response to Paragraph 6, the allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants admit the existence of the cited ordinance and quoted text.

7. In response to Paragraph 7, the allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants admit the existence of the cited ordinance and accuracy of the quoted text.

8. In response to Paragraph 8, the allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants admit the existence of the cited ordinance and quoted text.

9. In response to Paragraph 9, the allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants admit the existence of the cited ordinance and quoted text.

10. In response to Paragraph 10, the allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants admit the existence of the cited ordinance and quoted text.

11. In response to Paragraph 11, the allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required to those allegations, Defendants are without knowledge or information sufficient to form a belief about their truth. Defendants deny the remaining allegations.

12. In response to Paragraph 12, Defendants admit the existence of the cited cases and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

13. In response to Paragraph 13, Defendants admit the existence of the cited cases and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

14. In response to Paragraph 14, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

15. In response to Paragraph 15, Defendants admit the existence of the cited cases and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

16. In response to Paragraph 16, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

17. In response to Paragraph 17, Defendants admit the existence of the cited cases and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

18. In response to Paragraph 18, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

19. In response to Paragraph 19, Defendants admit the Plaintiffs are seeking the relief described for the reasons alleged but deny that they are entitled to any such relief.

**Jurisdiction and Venue**

20. In response to Paragraph 20, Defendants admit the allegations.

21. In response to Paragraph 21, Defendants admit the allegations.

22. In response to Paragraph 22, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants admit that United States actively enforces federal

immigration throughout the State of New Mexico through its use of real property and its agreements with local government entities concerning, for example, the detention of aliens. Defendants admit that, besides the Stipulation entered in this case, Defendants have not disavowed any intention of invoking HB9 against the United States. No response from Defendants is required to the allegations concerning co-defendants. To the extent a response to those allegations is required, Defendants are without knowledge or information sufficient to form a belief about their truth. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

23. Defendants admit that the State of New Mexico, through its Attorney General, intends to and has filed actions to enforce HB9 against Otero, Torrance, and Curry counties. Defendants deny the remaining allegations.

**Parties**

24. In response to Paragraph 24, Defendants admit the allegations.

25. In response to Paragraph 25, Defendants admit the allegation.

26. In response to Paragraph 26, Defendants deny that Governor Michelle Lujan Grisham has "control over" Attorney General Torrez. Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

27. In response to Paragraph 27, Defendants admit the allegations.

28. In response to Paragraph 28, Defendants admit the allegation.

29. In response to Paragraph 29, Defendants admit Timothy Keller is the Mayor of the City of Albuquerque. The remaining allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

30. In response to Paragraph 30, Defendants admit the allegation.

31. In response to Paragraph 31, Defendants admit Cindy Chavez is the County Manager of Bernalillo County. The remaining allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

32. In response to Paragraph 32, Defendants admit the allegation.

33. In response to Paragraph 33, Defendants admit Scott Andrews is the County Manager of Doña Ana County. The remaining allegations concern a co-defendant to which no response from Defendants is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

**The Supremacy Clause, Federal Preemption, and Intergovernmental Immunity**

34. In response to Paragraph 34, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

The Supremacy Clause

35. In responses to Paragraph 35, Defendants admit the existence of the Supremacy Clause and accuracy of the quoted text.

36. In responses to Paragraph 36, Defendants admit the existence of the cited cases and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

37. In responses to Paragraph 37, Defendants admit the existence of the cited cases and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

38. In responses to Paragraph 38, Defendants admit the existence of the cited cases and laws and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

Federal Preemption

39. In responses to Paragraph 39, Defendants admit the existence of the cited cases and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

40. In response to Paragraph 40, Defendants admit the existence of the cited cases and the substantive accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

41. In response to Paragraph 41, Defendants admit the existence of the cited case. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

42. In response to Paragraph 42, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

Intergovernmental Immunity

43. In response to Paragraph 43, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

44. In response to Paragraph 44, Defendants admit the existence of the cited cases and the substantive accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

45. In response to Paragraph 45, Defendants admit the existence of the cited cases and the accuracy of the quoted text, except that "treats someone else better than" does not appear in the

cited case. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

46. In response to Paragraph 46, Defendants admit the existence of the cited cases and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

**The Contract Clause**

47. In response to Paragraph 47, Defendants admit the existence of the Contract Clause and the Federalist Papers and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

48. In response to Paragraph 48, Defendants admit the existence of the cited cases and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

49. In response to Paragraph 49, Defendants admit the existence of the cited cases and accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

**Federal Immigration Law and Enforcement**

50. In response to Paragraph 50, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

51. In response to Paragraph 51, Defendants admit the existence of the Constitution and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

52. In response to Paragraph 52, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

53. In response to Paragraph 53, Defendants admit the existence of the cited laws and case and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

54. In response to Paragraph 54, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

55. In response to Paragraph 55, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

56. In response to Paragraph 56, Defendants admit the existence of the cited laws and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

57. In response to Paragraph 57, Defendants admit the existence of the cited law and case and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

58. In response to Paragraph 58, Defendants admit the existence of the cited law and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

59. In response to Paragraph 59, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

60. In response to Paragraph 60, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations

61. In response to Paragraph 61, Defendants admit the existence of the cited law and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

62. In response to Paragraph 62, Defendants admit the existence of the cited laws and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

63. In response to Paragraph 63, Defendants admit the existence of the cited law and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

64. In response to Paragraph 64, Defendants admit the existence of the cited case and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

65. In response to Paragraph 65, Defendants admit the existence of the cited case. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

66. In response to Paragraph 66, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

67. In response to Paragraph 67, Defendants admit the existence of the cited laws and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

68. In response to Paragraph 68, Defendants admit the existence of the cited law, signing statement, and House Report and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

69. In response to Paragraph 69, Defendants admit the existence of the cited laws and cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

70. In response to Paragraph 70, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

71. In response to Paragraph 71, Defendants admit the existence of the cited laws and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

72. In response to Paragraph 72, Defendants admit the existence of the cited law and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

73. In response to Paragraph 73, Defendants admit the existence of the cited laws and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

74. In response to Paragraph 74, Defendants admit the existence of the cited laws and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

75. In response to Paragraph 75, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations.

76. In response to Paragraph 76, Defendants admit the existence of the cited laws and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

77. In response to Paragraph 77, Defendants admit the existence of the cited law and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

78. In response to Paragraph 78, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

## Factual Background

### The State of New Mexico and HB9

79. In response to Paragraph 70, Defendants admit the allegations.

80. In response to Paragraph 80, Defendants admit the existence of the cited law and the accuracy of the quoted text.

81. In response to Paragraph 81, Defendants admit the existence of the cited laws and the accuracy of the quoted text.

82. In response to Paragraph 82, Defendants admit the existence of the cited laws and the accuracy of the quoted text.

83. In response to Paragraph 83, Defendants admit the existence of the cited laws and the accuracy of the quoted text.

84. In response to Paragraph 84, Defendants admit the existence of the cited law and the accuracy of the quoted text.

85. In response to Paragraph 85, Defendants admit the existence of the cited law and the accuracy of the quoted text.

86. In response to Paragraph 86, Defendants admit the existence of the cited laws and the accuracy of the quoted text.

The City of Albuquerque and the ASCPO

87. In response to Paragraph 87, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

88. In response to Paragraph 88, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

89. In response to Paragraph 89, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

90. In response to Paragraph 90, the allegation concerns a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about its truth.

91. In response to Paragraph 91, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

92. In response to Paragraph 92, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

93. In response to Paragraph 93, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

Bernalillo County and the BSCPO

94. In response to Paragraph 94, the allegation concerns a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about its truth.

95. In response to Paragraph 95, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

96. In response to Paragraph 96, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

Dona Ana County and the SCAR

97. In response to Paragraph 97, the allegation concerns a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about its truth.

98. In response to Paragraph 98, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

99. In response to Paragraph 99, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

100. In response to Paragraph 100, the allegation concerns a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about its truth.

101. In response to Paragraph 101, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

102. In response to Paragraph 102, the allegations concern a co-defendant to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

The Otero-ICE Contract

103. In response to Paragraph 103, Defendants admit that the Otero County Processing Center (OCPC) has housed civil immigration detainees since 2008 under a series of Intergovernmental Service Agreements (IGSAs) with ICE. Defendants deny the remaining allegations.

104. In response to Paragraph 104, Defendants admit the allegations regarding the OCPC's location and bed capacity. Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations concerning the role the OCPC plays in ICE's civil immigration operations. Defendants deny the remaining allegations.

105. In response to Paragraph 105, Defendants admit the allegations.

106. In response to Paragraph 106, Defendants admit that Otero County engages the MTC pursuant to the terms of the related Operations, Management, and Maintenance Agreement. Defendants deny the remaining allegations.

**The Challenged Laws are Preempted by Federal Immigration Law**

107. In response to Paragraph 107, Defendants admit the existence of the cited case and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

108. In response to Paragraph 108, Defendants admit the existence of the cited statutes. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

109. In response to Paragraph 109, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations concerning DHS operations or the impact that termination or non-extension of the Otero-ICE Contract or Otero-MTC Contract will have on DHS. Defendants deny that OCPC is a "high-quality facility." Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

110. In response to Paragraph 110, Defendants admit the existence of the cited statute and case and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

111. In response to Paragraph 111, Defendants admit the existence of the cited statute and cases. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

112. In response to Paragraph 112, Defendants deny the allegations.

113. In response to Paragraph 113, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

114. In response to Paragraph 114, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

115. In response to Paragraph 115, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

116. In response to Paragraph 116, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

117. In response to Paragraph 117, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

118. In response to Paragraph 118, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

**The Challenged Laws Violate the Principles of Intergovernmental Immunity**

119. In response to Paragraph 119, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

The Challenged Laws Unlawfully Regulate the Federal Government

120. In response to Paragraph 120, Defendants admit the existence of the cited cases and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

121. In response to Paragraph 121, Defendants admit the existence of the cited cases and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

122. In response to Paragraph 122, Defendants admit the existence of the cited case and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and

legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

123. In response to Paragraph 123, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

124. In response to Paragraph 124, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

125. In response to Paragraph 125, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

126. In response to Paragraph 126, Defendants also lack knowledge or information sufficient to form a belief as to the harm the Plaintiff has allegedly suffered. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

The Challenged Laws Discriminate Against the Federal Government

127. In response to Paragraph 127, Defendants admit the existence of the cited statutes and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

128. In response to Paragraph 128, Defendants admit that HB9 prohibits public entities from contracting with DHS to use detention facilities for civil immigration detention purposes. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

129. In response to Paragraph 129, Defendants admit the existence of the cited statute and the accuracy of the quoted text. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

130. In response to Paragraph 130, Defendants admit that the Federal Government alone is tasked with the enforcement of federal immigration law. Defendants admit that Congress has allowed the formation of cooperative agreements between state and local entities and the Federal Government concerning the enforcement of immigration law. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

131. In response to Paragraph 131, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

132. In response to Paragraph 132, Defendants admit the existence of the cited case and the accuracy of the quoted text. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

133. In response to Paragraph 133, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

**HB9 Violates the Contract Clause**

134. In response to Paragraph 134, Defendants deny the allegations.

135. In response to Paragraph 135, Defendants are without knowledge or information sufficient to form a belief about the effect that the termination of existing agreements will have on the Federal Government. Defendants deny the remaining allegations.

136. In response to Paragraph 136, Defendants deny the allegations.

137. In response to Paragraph 137, Defendants admit the accuracy of the quoted text. Defendants deny the remaining allegations.

138. In response to Paragraph 138, Defendants admit the existence of the cited laws. Defendants deny the remaining allegations.

139. In response to Paragraph 139, Defendants admit the existence of the cited case and the accuracy of the quoted text. Defendants deny the remaining allegations.

140. In response to Paragraph 140, Defendants deny the allegations.

141. In response to Paragraph 141, Defendants admit that immigration is subject to federal regulation and within the ambit of federal power and authority. Defendants deny the remaining allegations.

142. In response to Paragraph 142, Defendants deny the allegations.

143. In response to Paragraph 143, Defendants are without knowledge or information sufficient to form a belief about the effect of the termination of the Otero-ICE Contract on the Federal Government or Otero County. Defendants admit that New Mexico has oversight and review authority over facilities within the state but lacks oversight over facilities outside the state. Defendants deny the remaining allegations.

144. In response to Paragraph 144, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations regarding ICE's operations and resources.

145. In response to Paragraph 145, Defendants admit that Curry County and Torrance County have 287(g) agreements with ICE. Defendants admit that the agreements, known as warrant service officer agreements, allow ICE to train local law enforcement and, after training, deputize them to assist with federal immigration warrants. Defendants deny the remaining allegations.

146. In response to Paragraph 146, Defendants deny the allegations.

**The Impact of the Enforcement of the Challenged Laws**

147. In response to Paragraph 147, Defendants deny that New Mexico's enforcement of HB9 manifests "animosity towards civil detention agreements" and that the Petition "express[ed] clear frustration with the Otero-ICE Contract." Defendants admit the remaining allegations.

148. In response to Paragraph 148, Defendants admit that the Attorney General is empowered to and has already sought injunctive relief under HB9. Defendants further admit that enforcement of HB9 could lead to the termination of agreements between ICE and New Mexico local government entities. Defendants deny the remaining allegations.

149. In response to Paragraph 149, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations about the Federal Government's reliance on the referenced agreements. Defendants deny the remaining allegations.

150. In response to Paragraph 150, Defendants are without knowledge or information sufficient to form a belief about the effect the termination of the Otero-ICE or Otero-MTC Contracts on the Federal Government. Defendants admit that New Mexico has oversight over facilities within the state but lacks oversight over facilities outside the state. Defendants deny the remaining allegations.

151. In response to Paragraph 151, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations about the effect of HB9 on Otero County, except that Defendants deny the allegations concerning Otero County's municipal bond.

152. In response to Paragraph 152, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations concerning the role of 287(g) agreements to ICE operations. Defendants deny the remaining allegations.

153. In response to Paragraph 153, Defendants admit their intent to enforce HB9. The remaining allegations concern co-defendants to which no response from Defendant is required. To

the extent a response to those allegations is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

154. In response to Paragraph 154, the allegations concern co-defendants to which no response from Defendant is required. To the extent a response to those allegations is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

155. In response to Paragraph 155, the allegations concern co-defendants to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

156. In response to Paragraph 156, the allegations concern co-defendants to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

157. In response to Paragraph 157, the allegations concern co-defendants to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

158. In response to Paragraph 158, the allegations concern co-defendants to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

159. In response to Paragraph 159, the allegations concern co-defendants to which no response from Defendant is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief about their truth.

160. In response to Paragraph 160, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

161. In response to Paragraph 161, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

162. In response to Paragraph 162, Defendants admit that States may not adopt laws that violate the U.S. Constitution and deny the remaining allegations.

163. In response to Paragraph 163, Defendants deny the allegations, which reflect Plaintiff's legal arguments and conclusions.

**Claims for Relief**

Count I

164. In response to Paragraph 164, Defendants incorporate foregoing paragraphs of the Answer as if fully stated here.

165. In response to Paragraph 165, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

166. In response to Paragraph 166, Defendants admit the existence of the cited statutes. Defendants deny the remaining allegations, which reflect Plaintiff's legal arguments and conclusions.

167. In response to Paragraph 167, Defendants admit the existence of the cited statutes. Defendants deny the remaining allegations.

168. In response to Paragraph 168, Defendants admit the existence of the cited statutes. Defendants deny the remaining allegations.

169. In response to Paragraph 169, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

170. In response to Paragraph 170, Defendants admit the existence of the cited statutes. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

171. In response to Paragraph 171, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

172. In response to Paragraph 172, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

173. In response to Paragraph 173, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

Count II

174. In response to Paragraph 174, Defendants incorporate foregoing paragraphs of the Answer as if fully stated here.

175. In response to Paragraph 175, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

176. In response to Paragraph 176, Defendants deny the allegations.

177. In response to Paragraph 177, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

178. In response to Paragraph 178, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

179. In response to Paragraph 179, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

180. In response to Paragraph 180, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

Count III

181. In response to Paragraph 181, Defendants incorporate foregoing paragraphs of the Answer as if fully stated here.

182. In response to Paragraph 182, Defendants admit the existence of the cited case. The remaining allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

183. In response to Paragraph 183, Defendants admit the allegation.

184. In response to Paragraph 184, Defendants admit that HB9 restricts public bodies from entering into Section 287(g) agreements and agreements to detain aliens for civil immigration enforcement purposes while allowing public bodies to form agreements for other functions unrelated to federal immigration law. Defendants deny the remaining allegations.

185. In response to Paragraph 185, Defendants admit the accuracy of the quote. Defendants deny the remaining allegations.

186. In response to Paragraph 186, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

187. In response to Paragraph 187, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

188. In response to Paragraph 188, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

189. In response to Paragraph 189, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

190. In response to Paragraph 190, the allegations in this paragraph contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

Count IV

191. In response to Paragraph 191, Defendants incorporate foregoing paragraphs of the Answer as if fully stated here.

192. In response to Paragraph 192, Defendants admit that the Contract Clause and cited case are accurately quoted.

193. In response to Paragraph 193, Defendants admit the allegations.

194. In response to Paragraph 194, Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations.

195. In response to Paragraph 195, Defendants deny the allegations.

196. In response to Paragraph 196, Defendants deny the allegations.

197. In response to Paragraph 197, Defendants deny the allegations.

198. In response to Paragraph 198, Defendants deny the allegations.

199. In response to Paragraph 199, Defendants deny the allegations.

200. In response to Paragraph 200, Defendants deny the allegations.

Count V

201. In response to Paragraphs 201–209, the allegations in these paragraphs contain argument and legal conclusions to which no response from Defendants is required; to the extent a response is required, denied.

**Prayer for Relief**

A. In response to Paragraph A, Defendants deny Plaintiff's Prayer for Relief and state that Plaintiffs are not entitled to the relief described.

B. In response to Paragraph B, Defendants deny Plaintiff's Prayer for Relief and state that Plaintiffs are not entitled to the relief described.

C. In response to Paragraph C, Defendants deny Plaintiff's Prayer for Relief and state that Plaintiffs are not entitled to the relief described.

D. In response to Paragraph D, Defendants deny Plaintiff's Prayer for Relief and state that Plaintiffs are not entitled to the relief described.

E. In response to Paragraph E, Defendants deny Plaintiff's Prayer for Relief and state that Plaintiffs are not entitled to the relief described.

F. In response to Paragraph F, Defendants deny Plaintiff's Prayer for Relief and state that Plaintiffs are not entitled to the relief described.

## Affirmative Defenses

FIRST AFFIRMATIVE DEFENSE

The Complaint and claims for relief set forth in the Complaint fail to state a claim upon which relief can be granted against Defendants.

Defendants respectfully request the Court to dismiss Plaintiff's Complaint, and for such other relief as this Court deems just and proper.

## COUNTERCLAIMS FOR DECLARATORY RELIEF

## INTRODUCTION

In February 2026, New Mexico's Legislature enacted, and the Governor signed, House Bill 9, codified at Sections 13-9-1 to -6 as the Immigrant Safety Act (HB9). In so doing, New Mexico exercised its sovereign authority to ensure that its political subdivisions do not provide detention services and other voluntary law enforcement support for the federal government's civil immigration enforcement agenda.

Plaintiff-Counterclaim Defendant United States, through Counter-Defendant Immigration and Customs Enforcement (ICE), and Counter-Defendant Otero County Board of Commissioners, have long been parties to an Intergovernmental Services Agreement (Otero-ICE IGSA) under which Otero County houses civil immigration detainees for the federal government at the Otero County Processing Center (OCPC). When the New Mexico House passed a bill banning such agreements in 2025, Defendants modified their longstanding IGSA to evade the operative requirements of the bill. For the first time, and in what appears to be a unique provision among ICE IGSAs nationwide, the Otero-ICE IGSA deprived the Board of its right to terminate the agreement for any reason and gave ICE exclusive authority to terminate the agreement. When similar legislation became law the following year, ICE and the Board again included this unilateral termination clause in a new Otero-ICE IGSA that the parties entered into in the weeks between HB9's enactment and its effective date. This

lopsided provision serves one purpose: to undermine New Mexico's sovereign determination that its political subdivisions must refrain from participating in certain civil immigration enforcement activities. The United States's and the Board's flagrant flouting of New Mexico's public policy injures the State by depriving it of its constitutional authority to regulate its political subdivisions. The 2026 Otero-ICE IGSA is thus void for public policy and unenforceable as a matter of New Mexico law. Further, ICE's execution of the 2026 IGSA is both arbitrary and capricious and contrary to law in violation of the Administrative Procedure Act (APA). 5 U.S.C. § 706(2)(A). For these reasons, the Court should declare unlawful, enjoin, and set aside the 2026 Otero-ICE IGSA.

**PARTIES**

1. Defendant-Counterclaim Plaintiff the State of New Mexico is represented by Attorney General Raúl Torrez, who is the chief law enforcement officer of the State of New Mexico and authorized to bring this action subject to his broad civil enforcement authority to initiate actions to promote the law and interests of the State of New Mexico. N.M. Stat. Ann. § 8-5-2(B), (J). Pursuant to the Attorney General's duty to promote the public's interest through litigation, he has the authority to bring suit against other governmental entities, be they local, state, or federal. *See, e.g., Johnson & Johnson v. Wilson*, 2025-NMSC-003, ¶¶ 19–22, 563 P.3d 841.

2. Plaintiff-Counterclaim Defendant the United States of America enforces federal immigration laws through its Executive Branch agencies, including Counterclaim Defendant Department of Homeland Security (DHS), and its component agencies, including Counterclaim Defendant Immigrant and Customs Enforcement (ICE). *See, e.g.* 8 U.S.C. § 1231.

3. Counterclaim Defendant Board of County Commissioners for Otero County is the governing body of Otero County. N.M. Stat. Ann. § 4-38-1.

4. The Board is responsible for the overall governance, management, and legislative actions of Otero County, including intergovernmental agreements by or on behalf of the County. *See*

*id.* § 4-38-1 ("The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners."); *see generally id.* §§ 4-38-1 to -42.

5. The Board represents the County and is responsible for the care of County property and managing the County's interests in all cases where no other provision is made by law. *Id.* § 4-38-18. The Board, through its chair, signed the 2026 Otero-ICE IGSA. Am. Compl. Ex. H, at 4, Dkt. No. 42-8 (2026 Otero-ICE IGSA).

## JURISDICTION

6. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 over the counterclaims that arise under the APA and the Tenth Amendment. This Court also has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a) because they arise out of the 2026 Otero-ICE IGSA, which is the subject matter of the Plaintiff-Counterclaim Defendant's Amended Complaint.

7. This Court has personal jurisdiction over the United States and its component agencies, including DHS and ICE. *See V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 132 (2d Cir. 2022) ("[A] plaintiff bringing suit in a forum 'submit[s] itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants.'" (quoting *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932)).

8. The United States and its component agencies DHS and ICE have waived sovereign immunity as to this civil action. 5 U.S.C. §§ 702–703. *See also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not." (quoting *Chamber of Com. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996)), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 216 (2007).

9. This Court has personal jurisdiction over Counterclaim Defendant Board. Otero County is a political subdivision of the State of New Mexico, created by N.M. Stat. Ann. Section 4-

19-1. *See also* N.M. Stat. Ann. § 4-46-1 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county.").

10. Declaratory relief is sought consistent with 5 U.S.C. § 706.

## VENUE

11. Venue is proper for this counterclaim in the United States District Court for the District of New Mexico. Venue is proper under 28 U.S.C. § 1391(b)(2) because the District of New Mexico is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred. By bringing this suit, the United States waived any venue objections. *See Gen. Elec. Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 435 (1932) (explaining that by filing a complaint, a plaintiff waives venue for the purpose of a counterclaim).

## FACTS

### Human Rights Abuses in Civil Immigration Detention Centers

12. As of April 2026, more than 1,400 people are being held in ICE custody in New Mexico.[1] ICE holds people in three detention facilities in New Mexico,[2] only one of which is publicly owned: OCPC.[3]

---

[1] *Detention Facilities Average Daily Population*, TRAC Immigration, https://tracreports.org/immigration/detentionstats/facilities.html [https://perma.cc/72VE-RNCG] (last visited Jun. 17, 2026).

[2] *Detention Facilities*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/detention-facilities [https://perma.cc/JY52-TUHU] (last visited Jun. 17, 2026).

[3] The Board funded OCPC's initial construction with a series of bonds. Otero County, *New Mexico Jail Project Revenue Bonds, Series 2007 Official Statement*, Electronic Municipal Market Access (May 23, 2007), https://emma.msrb.org/MS259954-MS235262-MD458910.pdf [https://perma.cc/8WQP-QJNJ]. The bonds, issued in 2007 to private individuals and companies, are payable solely from the facility's revenues, meaning that the Board is not obligated to make payments on the bonds if the detention center revenues are insufficient. *Id.* at 6 (explaining bonds are secured by facility revenue and a reserve fund, not by County funds). In the original bond documents, purchasers were advised that the jail revenue bonds—as the name may suggest—are dependent on the detention center making a profit and that changes in the law could mean the center becomes defunct. *Id.* at 1–5 (listing risk factors for bonds, including "[i]f State law should be amended so as to prohibit bed space from being occupied by State or out-of-state prisoners, … the Facility may not be able to generate sufficient Net Revenues to pay debt service on the Bonds by housing only legally available prisoners.").

13. Civil immigration detention centers in New Mexico have a history of human rights abuses, including raw sewage leaks, lack of medical care, drug trafficking by facility staff, and assaults by other detained people and by guards.[4]

14. OCPC in particular has long been the subject of complaints of civil rights violations. Multiple sources have reported the abuse of individuals entrusted to its custody, including the death of a 32-year-old man,[5] overcrowding,[6] unsanitary conditions,[7] and allegations of indefinite detention,[8] and retaliatory use of solitary confinement.[9]

15. In 2024, the New Mexico Advisory Committee to the United States Commission on Civil Rights opened an investigation into OCPC after persistent reports of unsafe conditions, due process violations, and concerns about secretive contracting.[10] That investigation concluded in

---

[4] New Mexico Advisory Committee to the U.S. Commission on Civil Rights, *Civil Rights in Immigrant Detention Centers in New Mexico* (Sep. 8, 2025), https://www.usccr.gov/files/2025-09/nm-report-on-immigrant-detention.pdf [https://perma.cc/EU5R-NFWX]; *see CoreCivic Pays Settlement to Estate of 23-Year-Old Asylum Seeker Who Died in Torrance County Detention Facility*, ACLU New Mexico (Mar. 19, 2026), https://www.aclu-nm.org/press-releases/corecivic-pays-settlement-to-estate-of-23-year-old-asylum-seeker-who-died-in-torrance-county-detention-facility/ [https://perma.cc/MD72-ZV7T]; *see* Class Action Compl. at 3, *Doe v. U.S. Immigration and Customs Enforcement*, No. 1:23-cv-00971-MLG-JMR (D.N.M. Oct. 17, 2024), Dkt. No. 84.

[5] *Detainee Death Report: Jhon Benavides Quintana*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/doclib/foia/reports/ddr_jhonBenavidesQuintana.pdf [https://perma.cc/94Y5-HGE3] (last visited Jun. 15, 2026).

[6] *Rep. Vasquez finds overcrowded ICE facility detaining mostly non-criminal immigrants*, N.M. Political Report (Jul. 31, 2025), https://nmpoliticalreport.com/2025/07/31/rep-vasquez-finds-overcrowded-ice-facility-detaining-mostly-non-criminal-immigrants/ [https://perma.cc/6XA7-6CFC].

[7] Despite Plaintiff's attempts to rely on declarations from DHS Regional Officers or Management and Training Corporation personnel touting OCPC's historical compliance ratings (*see* Pl. Mot. for Prelim. Inj., Exs. A & B), the government's own oversight records routinely expose a pattern of recurring operational deficiencies dating back nearly a decade. *See Concerns about ICE Detainee Treatment and Care at Detention Facilities*, Office of the Inspector General of Homeland Security (Dec. 11, 2017), https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf, at 7 [https://perma.cc/H3VE-WMEP] (documenting that unannounced inspections triggered by systemic hotline complaints revealed extensive, non-compliant conditions, including a pervasive "lack of cleanliness" and unsafe and unhealthy detention environments).

[8] *See* Pet. for Writ of Habeas Corpus at 2, *Perez Parra v. Castro*., No. 1:24-cv-00912-KG-KRS (D.N.M. Sep. 13, 2024), Dkt. No. 1 (dismissed after the government deported the petitioners to Venezuela less than twenty-four hours after petitioners obtained a temporary restraining order to enjoy their transfer to the Guantánamo Bay Naval Station).

[9] *Request for Investigation on Retaliatory Use of Solitary Confinement at Otero County Processing Center*, ACLU of N.M. (May 23, 2024), https://acrobat.adobe.com/id/urn:aaid:sc:VA6C2:e7f925af-ac2c-411b-91ad-3d3f7e90495d?viewer%21megaVerb=group-discover [https://perma.cc/5B3C-E9H5]; *Supplemental Information Regarding Request for Investigation on Retaliatory Use of Solitary Confinement at Otero County Processing Center*, ACLU of N.M. (Jun. 21, 2024), https://www.aclu-nm.org/app/uploads/2024/06/2024.06.21_supplement_to_may_23_request_for_investigation_redacted_1.pdf [https://perma.cc/7AK7-5Y85].

[10] New Mexico Advisory Committee to the U.S. Commission on Civil Rights, *supra* note 4.

September 2025 and recommended closing the facility due to unsanitary facility conditions, substandard food and personal hygiene access, inadequate medical care, limited access to legal representation and rights education, and lack of transparency from facility operators and government agencies.[11] The facility did not close, and the unsafe conditions have continued.

16. As recently as October 2025, OCPC personnel reportedly withheld medical care for months from a pregnant woman with gestational diabetes and pre-eclampsia, causing severe symptoms—including abdominal pain, dizziness, near-fainting, weakness, and inability to eat—that posed threats of miscarriage and serious complications.[12] Although these allegations were not cognizable in habeas, the federal judge presiding over her habeas petition called them "concerning."[13]

17. Today, OCPC holds roughly 900 federal immigration detainees.[14]

HB9

18. In response to the abhorrent conditions in which people are confined for civil immigration offenses, New Mexico began exploring ways to disentangle itself from prior voluntary efforts to cooperate with federal civil immigration law enforcement.

19. In February 2025, House Bill 9 was introduced in the New Mexico Legislature.[15] The bill would have prohibited public bodies in New Mexico from entering into, renewing, or otherwise

---

[11] *Id.* at 18.

[12] Petitioner's Aff. to Verified Mot. to Expedite Briefing, Hr'g, and Decision on Prelim. Inj. and Habeas Pet., *Fanego Cardoso v. Noem*, No. 2:25-cv-00968-WJ-JMR (D.N.M. Jan. 7, 2026), Dkt. No. 19-4.

[13] Mem. and Op. on Denying Pets. for Writ of Habeas Corpus and Writ of Mandamus at 7, *Fanego Cardoso v. Noem*, No. 2:25-cv-00968-WJ-JMR (D.N.M. Jan. 26, 2026), Dkt. No. 23.

[14] Resp't Resp. to Emergency Verified Pet. for Writ of Mandamus and Opp'n to Req. for Stay at 2, *State ex rel. Torrez v. Bd. Of Cnty. Comm'rs for Otero Cnty.*, No. S-1-SC-41362; *Intergovernmental Service Agreement Between U.S. DHS and County of Otero, NM*, Am. Compl. Ex. H at 6, Dkt. No. 42-8 (defining population as "ICE detained noncitizens are not charged with criminal violations and are only held in custody to ensure their presence throughout the administrative hearing process and to assure their presence for removal").

[15] *HB9 Immigrant Safety Act*, New Mexico Legislature, https://www.nmlegis.gov/Legislation/Legislation?Chamber=H&LegType=B&LegNo=9&year=25 [https://perma.cc/4YPX-97YZ] (last visited Jun. 11, 2026).

agreeing to be a party to any contract to detain individuals for federal civil immigration violations.[16] The bill did not pass the Senate.[17]

20. The following year, as the federal Government escalated its attempts to coerce states into participating in federal immigration enforcement,[18] New Mexico lawmakers reintroduced a similar measure, with an added prohibition preventing public bodies from entering into, extending, or renewing agreements to assist with federal immigration enforcement known as 287(g) agreements. *See* 8 U.S.C. § 1357(g).

21. On February 5, 2026, New Mexico's Legislature passed and the Governor signed, House Bill 9, codified at New Mexico Statutes Sections 13-9-1 to -6 as the Immigrant Safety Act.

22. HB9 prohibits "public bodies" from "enter[ing] into, extend[ing], renew[ing] or otherwise agree[ing] to be a party to an agreement to detain individuals for federal civil immigration violations, including an intergovernmental services agreement to detain individuals for civil immigration violations." N.M. Stat. Ann. § 13-9-3(A).

23. A "public body" is "a state or local government, a sheriff's department, an advisory board, a commission, an agency or an entity created by the constitution of New Mexico or any branch of government that receives public funding, including political subdivisions, special tax districts, school districts and institutions of higher education." *Id.* § 13-9-2.

24. Public bodies that are already party to a contract must "terminate the agreement upon the earliest date permissible under the terms of the agreement." *Id.* § 13-9-3(B). HB9 also prevents public bodies from disposing of real property to be used for civil immigration detention. *Id.* § 13-9-3(C).

---

[16] *House Bill 9,* New Mexico Legislature, https://www.nmlegis.gov/Sessions/25%20Regular/bills/house/HB0009.pdf [https://perma.cc/7NNE-URF2] (last visited Jun. 11, 2026).
[17] *HB9 Immigrant Safety Act*, *supra* note 15.
[18] Exec. Order No. 14287, 90 Fed. Reg. 18761 (Apr. 28, 2025) (threatening legal action and withholding of federal funding against so-called "sanctuary" jurisdictions).

25. HB9 took effect on May 20, 2026. *See* N.M. Const. art. IV, § 23 (laws take effect 90 days after the adjournment of the legislature enacting them).

26. To mitigate any potential monetary loss from the closing of detention facilities, New Mexico also enacted Senate Bill 273. *See* 2026 N.M. Laws Ch. 70. That law provides funding to cover bond payments tied to detention centers should the centers close and, as relevant here, allots $5,940,000 to Otero County. *Id.* § 1(A)(3).

Otero County Processing Center

27. OCPC is governed by an Intergovernmental Services Agreement executed by the Board and ICE. *See* 2026 Otero-ICE IGSA, Dkt. No. 42-8.

28. Under the Otero-ICE IGSA, the Board provides ICE with space and services to detain people for civil immigration offenses in exchange for a fixed bed day rate. *Id.*, art. 1.

29. The Board and ICE have agreed to IGSAs governing the OCPC at irregular intervals since the facility opened in 2008. *See, e.g.,* Def.'s Mot. to Dismiss Am. Compl. Ex. A, Dkt. No. 49-1 (2014 Otero-ICE IGSA); Def.'s Mot. to Dismiss Am. Compl. Ex. B, Dkt. No. 49-2 (2008 Otero-ICE IGSA).

30. Separate and apart from the IGSA, the Board contracts with the Management and Training Corporation (MTC), a private corporation, to manage and operate OCPC. *See* Am. Compl. Ex. I, Dkt. No. 42-9 (Otero-MTC Contract).

31. MTC receives a per diem rate per incarcerated person, meaning that its revenue stream is driven by how many people are detained in OCPC. *Id.*, art. V(A) (setting forth per diem rates of compensation).

ICE and the Board Rushed to Amend Otero-ICE IGSA with Unprecedented Terms

32. For 17 years—until the New Mexico House passed a bill in August 2025 that would have banned public bodies in New Mexico from providing civil immigration detention services to the

federal government—Otero-ICE IGSAs allowed either ICE or the Board to terminate the agreement upon the provision of written notice. *See* 2014 Otero-ICE IGSA, art. VIII; 2008 Otero-ICE IGSA, art. VII.

33. Five months after New Mexico's House passed the 2025 bill, ICE and the Board modified their IGSA, removing for the first time the Board's right to terminate the agreement. Def's Mot. to Dismiss Am. Compl. Ex. C, Dkt. No. 49-3 (Amendment 46 to the 2014 Otero-ICE IGSA). ICE and the Board later extended that agreement to run through March 15, 2026. Def's Mot. to Dismiss Am. Compl. Ex. D, Dkt. No. 49-4 (Amendment 47 to the 2014 Otero-ICE IGSA).

34. This termination provision was highly unusual if not unprecedented. Of the over 600 detention facility contracts or modifications in ICE's Freedom of Information Act library spanning eight years, there appear to be none besides the Otero-ICE IGSA that grants ICE exclusive, unilateral termination authority.[19]

35. After HB9's enactment in February 2026 but before it took effect on May 20, 2026, ICE and the Board—with MTC's direct involvement—executed a new IGSA with terms deliberately designed to circumvent the will of the New Mexico Legislature.

36. On March 12, 2026, ICE sent MTC a proposed 2026 IGSA. Ex. A, at 7. Consistent with the standard practice of ICE IGSAs, this proposed IGSA would have allowed both ICE and the Board to terminate the agreement.

37. Michael P. Petrogeorge, Vice President and General Counsel of MTC, informed MTC leadership via email that removing the Board's right to terminate was "necessary to insulate the agreement against HB9, which would require the Board to exercise any termination options it has under the contract upon the statutory effective date on May 20." Ex. A, at 6. Virleen Ferre, MTC's

[19] *See* ICE, FOIA ICE Library, https://www.ice.gov/foia/library [https://perma.cc/GG75-W7DM] (last visited Jun. 8, 2026).

Vice President of Contract Administration, then instructed ICE to remove the Board's termination rights. She explained that removing the Board's right to terminate is "necessary to insulate the agreement against HB9, which would require the County to exercise any termination options it has under the contract." Ex. A, at 4–5.

38. ICE adopted MTC's proposed changes to the termination provision. As a result, the new 2026 Otero-ICE IGSA allowed only ICE to terminate the agreement. 2026 Otero-ICE Agreement, art. 14(B) ("ICE may terminate this agreement by providing written notice of intention to terminate the agreement, . . . . The service provider shall not have the right to terminate this agreement.").

39. Had the 2026 Otero-ICE IGSA provided the same bilateral termination provisions as its pre-HB9 predecessors, Otero would have been required to immediately terminate the agreement upon the effective date of the law. *See* N.M. Stat. Ann. § 13-9-3(B) (requiring termination of existing detention contract inconsistent with HB9 "upon the earliest date permissible under the terms of the agreement").

40. ICE circulated this version of the IGSA to Otero County attorney Roy Nichols, and county manager, Pamela Heltner, on March 13, 2026.

41. Hours later, the Board held an improperly noticed emergency meeting to approve the new IGSA with ICE. The Board claimed not to have known that the existing IGSA was set to expire, which it used to justify a meeting that did not comply with the usual public notice requirements of the Open Meetings Act, N.M. Stat. Ann. §§ 10-15-1 to -4.[20]

---

[20] *See Otero County Response to NMDOJ Compliance Inquiry Dated March 20, 2026*, Source NM (Mar. 23, 2026), https://sourcenm.com/wp-content/uploads/2026/03/Nichols-to-Moffatt-re-NMDOJ-OMA-Response-3.23.2026.pdf [https://perma.cc/6HHD-BLUA]. The Board subsequently cured the lack of notice. *See* Patrick Lohmann, *Otero County extends federal immigrant detention contract again after first attempt deemed illegal*, Source NM (Mar. 26, 2026), https://sourcenm.com/2026/03/26/otero-county-extends-federal-immigrant-detention-contract-again-after-first-attempt-deemed-illegal/ [https://perma.cc/86FH-S82B].

42. A "Note to the Board" attached to the agenda for the emergency meeting informed the commissioners that the full contract was "on file" with the County Attorney, "available for review upon request," and that the Board was "not being asked to approve each provision of the underlying contract."[21]

43. The Board did not permit public comment at the meeting and adopted the new IGSA.[22]

44. Less than two weeks before HB9 took effect, the United States sued New Mexico and its officials, claiming, *inter alia*, that the law unconstitutionally impairs the 2026 Otero-ICE IGSA. *United States v. New Mexico, et al.,* No. 26-cv-01471 (D.N.M. May 8, 2026), Dkt. No. 1.

<u>Harm to New Mexico</u>

45. The Tenth Amendment to the U.S. Constitution reserves for the states all rights and powers "not delegated to" the federal government. U.S. CONST. amend. X. Among states' reserved "police powers" is the right to ensure the "protection of all property within the State." *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 62 (1872).

46. Such powers also include a state's power to regulate its political subdivisions. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 575 (1964) (counties have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions).

47. This power is reflected in New Mexico's Constitution. N.M. CONST. art. X, §5 ("An incorporated county may exercise all powers and shall be subject to all limitations granted to

[21] Chris Edwards, *Otero County Commission Approves New ICE Contract Under Emergency Declaration to Prevent Bond Default*, Alamogordo Town News (Mar. 13, 2026), https://2ndlifemediaalamogordo.town.news/g/alamogordo-nm/n/371099/otero-county-commission-approves-new-ice-contract-under-emergency [https://perma.cc/UQ3V-DJR3].

[22] Otero County, *Otero County Emergency Commission Meeting Friday March 13, 2026* (YouTube, Mar. 13, 2026), https://www.youtube.com/watch?v=WHFlvp5VFII [https://perma.cc/AH9R-ASAA]; *see also Opinion Request for Attorney General Raul Torrez* (Mar. 16, 2026), https://drive.google.com/file/d/1ajtsNUdG9xc4y93lCMxJJnFBqIeNOsw3/view [https://perma.cc/B68R-4ZB6].

municipalities by Article 9, Section 12 of the constitution of New Mexico and all powers granted to municipalities by statute."); *El Dorado at Santa Fe, Inc. v. Bd. of Cnty. Comm'rs*, 1976-NMSC-029, ¶ 6, 89 N.M. 313, 551 P.2d 1360 ("A county is but a political subdivision of the State, and it possesses only such powers as are expressly granted to it by the Legislature, together with those necessarily implied to implement those express powers.").

48. HB9 is a valid exercise of New Mexico's police power. The United States, through its component ICE, and the Board's entry into the 2026 IGSA, which eliminated the bilateral termination provisions in favor of a provision giving only ICE the unilateral authority to terminate, engaged in a blatant attempt to evade the law's requirements and, in turn, to circumvent the constitutional and statutory structure of New Mexico's governance. *Reynolds*, 377 U.S. at 575; *El Dorado at Santa Fe, Inc.*, 1976-NMSC-029, ¶¶ 6-7.

49. As detailed above, New Mexico enacted HB9 to prevent public bodies from "enter[ing] into, extend[ing], renew[ing] or otherwise agree[ing] to be a party to an agreement to detain individuals for federal civil immigration violations." N.M. Stat. Ann. § 13-9-3(A). This enactment reflects the policy judgment of the New Mexico Legislature on how the State and its political subdivisions set law enforcement priorities.

50. By executing an IGSA that purports to supersede New Mexico law, Plaintiff-Counterclaim Defendant United States, its component agencies Counterclaim Defendants DHS and ICE, and Counterclaim Defendant Board have injured New Mexico's ability to give full effect it its own laws governing their political subdivisions and law enforcement, harming its sovereign interests and intruding on an area traditionally left to the authority of the States.

**COUNT I**
**VOID FOR PUBLIC POLICY**
**(*Against Plaintiff-Counterclaim Defendant United States, its component agencies Counterclaim Defendants DHS and ICE, and Counterclaim Defendant Board)***

51. Defendant-Counterclaim Plaintiff incorporates all preceding paragraphs as though stated fully herein.

52. Under New Mexico law, "contracts are void as being contrary to public policy, when they are clearly contrary to what the legislature or judicial decision has declared to be the public policy." *First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015-NMSC-004, ¶ 12, 345 P.3d 310 (citation modified).

53. Governor Lujan Grisham signed HB9 into law on February 5, 2026, to take effect on May 20, 2026.

54. HB9 clearly reflects New Mexico's public policy against any "public body . . . enter[ing] into, extend[ing], renew[ing] or otherwise agree[ing] to be a party to an agreement to detain individuals for federal civil immigration violations, including an intergovernmental services agreement to detain individuals for civil immigration violations." N.M. Stat. Ann. § 13-9-3(A).

55. The 2026 Otero-ICE IGSA does precisely what HB9 prohibits. *See* 2026 Otero-ICE IGSA, at 1 (IGSA is "for the detention and care of detained noncitizens").

56. Over a month before the 2026 Otero-ICE IGSA was executed, New Mexico's Legislature had "declared" New Mexico's "public policy" to prohibit public bodies from entering into contracts to provide immigration detention. *First Baptist*, 2015-NMSC-004, ¶ 12.

57. In determining whether a contract is void as against public policy, courts consider "the seriousness of any misconduct involved and the extent to which it was deliberate." Restatement (Second) of Contracts § 178(3)(c) (A.L.I. 2024).

58. Plaintiff-Counterclaim Defendant United States, its component agencies Counterclaim Defendants DHS and ICE, and Counterclaim Defendant Board committed misconduct

by executing the 2026 IGSA which contained a unilateral termination provision intended to blatantly circumvent New Mexico sovereign authority to regulate its political subdivisions' participation in federal immigration enforcement.

59. For 17 years, the Otero-ICE IGSA allowed either party to terminate the agreement after providing notice. Indeed, allowing either party to terminate is a standard term for IGSAs with ICE.

60. But once the New Mexico House passed legislation that would have required public bodies to exercise their rights to terminate any IGSA with ICE, the Board and ICE agreed to an unprecedented IGSA modification that stripped Otero of the right to terminate.

61. Following the enactment of HB9 in February 2026, ICE and the Board negotiated a new Otero-ICE IGSA. ICE also sent the proposed agreement to MTC. As was standard, this IGSA permitted both ICE and the Board the right to terminate.

62. MTC leadership advised ICE that 2026 IGSA needed to be modified to remove the Board's right to terminate to "insulate the agreement against" New Mexico's declared public policy against public bodies providing immigration-detention services set forth in HB9.

63. ICE adopted MTC's changes and circulated a new version of the IGSA, which the Board adopted during its emergency meeting. A summary attachment for that meeting bore a note that the full IGSA was "on file" with the county attorney, "available for review upon request," and that the Board was "not being asked to approve each provision of the underlying contract."

64. But for the amendment of the termination clause, HB9 would have clearly required the Board to terminate the 2026 Otero-ICE IGSA. *See* N.M. Stat. Ann. § 13-9-3(B) (requiring termination of existing detention contract inconsistent with HB9 "upon the earliest date permissible under the terms of the agreement").

65. Because the 2026 Otero-ICE IGSA intentionally contravenes New Mexico's declared public policy against state and local involvement in federal civil immigration detention, it is void.

66. Defendant-Counterclaim Plaintiff therefore seeks a declaration from this Court that the 2026 Otero-ICE IGSA is void and unenforceable under New Mexico law.

**COUNT II**
**TENTH AMENDMENT**
**(*Against Plaintiff-Counterclaim Defendant United States and its component agencies Counterclaim Defendants DHS and ICE*)**

67. Defendant-Counterclaim Plaintiff State of New Mexico incorporates all preceding paragraphs as though stated fully herein.

68. The Tenth Amendment to the U.S. Constitution states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. This provision prohibits the federal government from "commandeering" state and local officials to aid in the enforcement of federal law. *See Printz v. United States*, 521 U.S. 898, 925 (1997).

69. Neither the Constitution nor any federal statute override New Mexico's Tenth Amendment right to regulate its political subdivisions and set state and local law enforcement priorities by limiting state and local entities from aiding in the enforcement of civil immigration law. *See, e.g.*, *United States v. California*, 921 F.3d 865, 889–91 (9th Cir. 2022).

70. Plaintiff-Counterclaim Defendant United States, through its component agency ICE, executed an IGSA with the Board that denies the Board the ability to terminate the agreement for any reason, whether out of a desire to adhere to New Mexico's public policy prohibiting such agreements or any other local interest. 2026 Otero-ICE IGSA, art. 14(B).

71. By executing an IGSA that requires the Board to detain individuals for civil immigration purposes, regardless of whether the Board seeks to cease doing so for any reason—including for cause—Plaintiff-Counterclaim Defendant United States, through its component

agencies DHS and ICE, seeks to commandeer the Board into participating in the enforcement of federal civil immigration law, in violation of the Tenth Amendment.

72. Plaintiff-Counterclaim Defendant United States, through its component agencies DHS and ICE, has thus executed an IGSA that requires the Board to aid in the enforcement of federal civil immigration law.

**COUNT III**
**ADMINISTRATIVE PROCEDURE ACT - 5 U.S.C. § 706(2)(A)**
**ARBITRARY AND CAPRICIOUS AGENCY ACTION**
**(*Against Plaintiff-Counterclaim Defendant United States and its component agencies Counterclaim Defendants DHS and ICE)***

73. Defendant-Counterclaim Plaintiff State of New Mexico incorporates all preceding paragraphs as though stated fully herein.

74. The APA entitles a person suffering "legal wrong" due to "agency action" to judicial review of that action. 5 U.S.C. § 702.

75. ICE and DHS are each an "agency" under the APA. *Id.* § 551(1). ICE is under the supervision of DHS.

76. ICE's execution of the 2026 Otero-ICE IGSA constitutes a "final agency action for which there is no other adequate remedy in a court." *Id.* § 704; *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

77. An agency action is final if it "mark[s] the consummation of the agency's decision making process" and is an action from "which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (citation modified).

78. By its terms, the 2026 Otero-ICE IGSA was final upon its execution by both parties. The contract both determines the parties' rights and imposes legal requirements because it requires the Board to provide ICE with space and services to detain people for civil immigration offenses in exchange for a fixed bed day rate. *See id.* at 177-78; *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp.

2d 1301, 1324 (N.D. Ala. 2005) (holding that contracts between Army Corps of Engineers and the state were final agency actions under the APA because entering contracts was a "discrete action that marked the consummation of the agency's decision-making process," and the contracts determined rights and obligations and had legal consequences).

79. A court must "hold unlawful and set aside agency action" that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A).

80. "An agency's decision is arbitrary and capricious if the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors, or (4) made a clear error of judgment." *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1233 (10th Cir. 2017) (quoting *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009) (citation modified)).

81. ICE's execution of the 2026 Otero-ICE IGSA was arbitrary and capricious because the agency failed to consider several important aspects of the problem; namely, New Mexico's declared public policy prohibiting its political subdivisions from providing immigration-detention services.

82. Here, as discussed above, *supra* ¶¶ 52–67, ICE entered into a contract in direct defiance of New Mexico's declared public policy. ICE adopted contract language that expressly aimed to avoid application of HB9 and New Mexico's sovereign decision to refrain from participating in certain aspects of civil immigration enforcement.

83. The 2026 Otero-ICE IGSA harms New Mexico because it prevents the State from exercising its constitutional authority to regulate its political subdivisions and set law enforcement priorities.

84. Accordingly, Defendant-Counterclaim Plaintiff State of New Mexico is entitled to an order and judgment holding unlawful and setting aside the 2026 Otero-ICE contract.

**COUNT IV**
**ADMINISTRATIVE PROCEDURE ACT - 5 U.S.C. § 706(2)(A)**
**CONTRARY TO LAW**
**(*Against Plaintiff-Counterclaim Defendant United States and its component agencies Counterclaim Defendants DHS and ICE)***

85. Defendant-Counterclaim Plaintiff State of New Mexico incorporates all preceding paragraphs as though stated fully herein.

86. ICE's execution of the 2026 Otero-ICE IGSA constitutes an "[a]gency action made [judicially] reviewable by statute and final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704; *see Bennett*, 520 U.S. at 177–78.

87. A court must "hold unlawful and set aside agency action" that is "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

88. ICE's execution of the 2026-Otero-ICE IGSA is contrary to federal common law because it is void for public policy for the reasons set out above, *supra* ¶¶ 52–67. A violation of federal common law can be a source of a "legal wrong" for the purposes of making a claim under the APA.

89. The 2026 Otero-ICE IGSA harms New Mexico because it prevents the State from exercising its constitutional authority to set law enforcement priorities.

90. Accordingly, Defendant-Counterclaim Plaintiff State of New Mexico is entitled to an order and judgment holding unlawful and setting aside the 2026 Otero-ICE contract.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant-Counterclaim Plaintiff State of New Mexico, by and through Attorney General Torrez, respectfully request that this Court enter judgment in their favor and grant the following relief:

1. Declare unlawful and set aside the 2026 Otero-ICE IGSA;

2. Permanently enjoin Plaintiff-Counterclaim Defendant United States, its component agencies Counterclaim Defendants DHS and ICE, and Counterclaim Defendant Board of County Commissioners for Otero County; their officers, agents, servants, employees, and attorneys; and anyone acting in concert or participation with Plaintiff-Counterclaim Defendant United States, its component agencies Counterclaim Defendants DHS and ICE, and Counterclaim Defendant Board from implementing, maintaining, extending, renewing, or giving effect to the 2026 Otero-ICE IGSA;

3. Award Defendant-Counterclaim Plaintiff its reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

4. Any other relief to which Defendant-Counterclaim Plaintiff is entitled and the Court deems just and proper.

Dated: August 19, 2026

August 19, 2026

Respectfully submitted,

*/s/ Bailey Colfax*

Raúl Torrez
Attorney General
Anjana Samant
Deputy Counsel
Amy Senier
Senior Counsel
Bailey Colfax
Assistant Attorney General
NEW MEXICO DEPARTMENT OF JUSTICE
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060
asamant@nmdoj.gov
asenier@nmdoj.gov
bcolfax@nmdoj.gov

Jonathan L. Backer*
Mary B. McCord*
Rupa Bhattacharyya
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
GEORGETOWN LAW
600 New Jersey Ave. NW
Washington, DC 20001
(202) 661-6671
(202) 661-6730 (fax)
jb2845@georgetown.edu
mbm7@georgetown.edu
rupa.bhattacharyya@georgetown.edu

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 19, 2026, I electronically filed the foregoing with the Clerk of the Court and served a copy upon all counsel of record registered to receive notice via the Court's CM/ECF system.

*/s/ Bailey Colfax*