**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**THE UNITED STATE OF AMERICA,**

**Plaintiff,**

**vs.** **No. 1:26-cv-01471-KG-LF**

**THE STATE OF NEW MEXICO; MICHELLE LUJAN GRISHAM, in her Official Capacity as Governor of the State of New Mexico; RAÚL TORREZ, in his official Capacity as Attorney General of the State of New Mexico; CITY OF ALBUQUERQUE; TIMOTHY KELLER, in his Official Capacity as Mayor of the City of Albuquerque; BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOÑA ANA; STEVEN LOPEZ, DEBORAH WEIR, and LUCIO LUTTRELL in their Official Capacities as Acting Managers of Doña Ana County; BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BERNALILLO; CINDY CHAVEZ, in her Official Capacity as Manager of Bernalillo County,**

**Defendants.**

**DOÑA ANA COUNTY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff's Response confirms what the Motion to Dismiss already showed: no federal statute, regulation, constitutional provision, or binding case law compels Doña Ana County to do anything the SCAR forbids. Instead, the Response recycles the same characterization of deliberate non-cooperation as "obstruction" that courts throughout the nation have repeatedly rejected on

closely analogous facts. *See*, e.g., *United States v. Colorado*, 831 F. Supp. 3d 1108 (D. Colo. 2026); *United States v. Minnesota*, No. 25-cv-3798, 2026 WL 2085701 (D. Minn. July 20, 2026); *United States v. County of Washtenaw*, No. 26-11166, 2026 WL 2453724 (E.D. Mich. Aug. 21, 2026). *Washtenaw* is the most recent word on this precise question. Decided eighteen days before this filing, it dismissed in full a suit challenging a county board resolution and sheriff's order that, like the SCAR, barred county property and personnel from use in civil immigration enforcement absent a judicial warrant. *Id.* at *14-*23. In granting the county's motion to dismiss, the *Washtenaw* court recognized that "neither the federal government nor the President may conscript local officials to enforce their will...nothing in the text of the INA requires the result the government seeks, and the government cannot otherwise compel localities to enforce the President's priorities in the manner it wishes." *Id.* at *1. That wisdom compels dismissal of the claims against Doña Ana County and its officials as well.

In its Response, the United States attempts an unsuccessful rhetorical pivot by contending that it "does not claim that it can commandeer County property and personnel for any purpose," but only that the County "cannot obstruct federal law enforcement" or "ignore Congressionally authorized means of enforcement." Resp. at 2. Recent court decisions confronting the same attempt to recast noncooperation as "obstruction" have rejected it. Dismissing the government's parallel claim in the detainer context, namely that it was not commanding continued custody, only opposing "obstruction" of a detainer request, the *Washtenaw* court put it bluntly: "'saying so does not make it so.'" 2026 WL 2453724, at *17 (citation omitted). The same is true here: whatever label the government puts on its demand, compliance would unlawfully compel the County to

devote its limited resources toward furthering the federal government's immigration enforcement agenda.

The remainder of the Response fares no better. Its express-preemption theory still cannot escape the rule that only a federal statute regulating private conduct can preempt state law, *Murphy v. NCAA*, 584 U.S. 453, 477 (2018), and its discrimination theory still rests on the same generic, unnamed "other law enforcement" comparator this Court's peers have already found insufficient. The Motion should be granted.

## ARGUMENT

### I. PLAINTIFF'S IMPLIED PREEMPTION CLAIM (COUNT I) STILL FAILS.

#### *A. Plaintiff's String Citation Does Not Identify an Actual Conflict With the SCAR.*

Obstacle preemption requires an actual, identified conflict with a federal command -- not a general sense that a local policy makes federal enforcement less convenient. *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (a litigant "must point specifically to a constitutional text or a federal statute that does the displacing," not "some brooding federal interest"). Plaintiff's Response now cites a string of provisions -- 8 U.S.C. §§ 1182, 1225(a), (d), 1226(a), (c), 1231(a), 1357(a), (d), (g), 1373, 1644, and 8 C.F.R. § 287.7 -- for the proposition that the SCAR's restrictions "conflict with and frustrate the objectives of Congress's scheme." Resp. at 6-7. But nearly all of these provisions describe DHS's own investigative, detention, and removal authority; none of them commands a county to make its property, records, or personnel available to exercise that authority. See *Printz v. United States*, 521 U.S. 898, 925 (1997) ("The Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs."). Sections 1373 and 1644 are the only provisions on Plaintiff's list that speak to state

or local conduct at all, and Plaintiff addresses those as an express-preemption theory separately in Count V; repeating them here does not supply the missing federal command for Count I. That omission is fatal for the reasons already explained in the Motion, and at least three additional courts have recently agreed. See *Colorado*, 831 F. Supp. 3d at 1116 ("[T]he basis for Plaintiff's claims is an interpretation of Congress's authority to regulate immigration that would compel state assistance."); *Minnesota*, slip op. at 43 (rejecting the "comprehensive federal statutory scheme" theory because it "does not persuasively explain how the challenged ordinances and directive pose an obstacle" to any specific provision); *Washtenaw*, 2026 WL 2453724, at *14 ("Plaintiff cannot use obstacle preemption to command what the statute permits.").

***B. Administrative Process Does Not Compel the Access the SCAR Withholds.***

Plaintiff's fallback, that administrative warrants and subpoenas are "congressionally authorized means of investigation and enforcing the law, just like judicial warrants," Resp. at 11, does not describe what the SCAR actually restricts. SCAR § 4(A)(1) addresses entry to non-public County areas, and § 4(A)(2)(a) addresses access to student or patient records. As to that entry and that access, an administrative warrant remains what courts have already held it to be: an instrument "issued by a federal agency rather than a judge," a fact "multiple courts have held . . . [means] that state and local cooperation is voluntary." *Colorado*, 831 F. Supp. 3d at 1116-17 (citing *Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014), and *United States v. California*, 921 F.3d 865, 887 (9th Cir. 2019)). Nor is Plaintiff's administrative subpoena self-executing: if a recipient declines, "the Government may apply to a federal district court for an order compelling attendance," and "only disobedience of that order is punishable as contempt." 8 U.S.C. § 1225(d)(4)(B); Resp. at 10; Mot. at 10 (same point). SCAR § 4(A)(2)(a) does not reject the administrative-subpoena

process Congress created; it simply requires DHS to take the step the statute itself already prescribes once a subpoena recipient declines to comply: obtaining a court order. The SCAR does not override that process; it invokes the judicial backstop Congress built into it.

Plaintiff's Fourth Amendment authorities fare no better. Plaintiff relies on *United States v. Butler*, 168 F.4th 1107 (8th Cir. 2026), for the proposition that an administrative warrant authorizes entry onto third-party property. Resp. at 12-13. *Butler* is not binding in this Circuit, but even on its own terms it held only that the subject of an arrest warrant lacks standing to invoke a third-party premises owner's Fourth Amendment interest in the search, which is a standing ruling, not a merits holding that administrative process authorizes entry. In any event, Butler does not address whether a county's employees must volunteer consent to entry for any immigration-enforcement purpose untethered to a named subject or arrest, which is what SCAR § 4(A)(1) addresses, or to records under § 4(A)(2)(a), which involves no search for a specific person at all. The Motion already explained why even a valid arrest warrant does not resolve that question: "even a judicial arrest warrant does not by itself authorize entry into a third party's premises to search for the subject." Mot. at 10 (citing *Steagald v. United States*, 451 U.S. 204, 213-16 (1981)).

Plaintiff's remaining citation in this realm fares no better. Plaintiff argues that "it is disputed whether DHS can obtain judicial warrants for immigration enforcement," citing *In re Sealed Search Warrant Application*, 784 F. Supp. 3d 970 (S.D. Tex. 2025), implying that it should be able to use an administrative warrant to obtain entry to County property or access to County records because that is its only option, Resp. at 11. But that case held only that a lesser administrative-inspection warrant cannot substitute for a full judicial warrant where the government sought to enter a business to search for and arrest undocumented workers; it certainly

does not say that judicial process is unavailable for the very different access the SCAR contemplates. More fundamentally, § 4(A)(1) governs only County employees' *voluntary consent* to entry. It does not purport to nullify a judicial warrant or other legal authority that independently permits federal officers to enter without County consent. Section 4(A)(2), separately, addresses records and expressly recognizes judicial process, whether through a warrant, subpoena, or order. Plaintiff identifies no authority establishing that administrative process is a sufficient substitute for any of the three forms of judicial process SCAR § 4(A) already accepts.

***C. Requiring Access on Demand Would Violate the Tenth Amendment.***

Plaintiff's Response never squarely confronts the anti-commandeering analysis in the Motion; it simply re-asserts that the County must yield access to its property and its employees' voluntary consent whenever a federal agent demands it or presents an administrative warrant. That is precisely the theory *Colorado* rejected: requiring the County to make its property and personnel available for federal civil immigration purposes "would directly force [the County] to bear the cost of enforcing the federal immigration scheme and remove [its] authority to determine the proper allocation of state resources." 831 F. Supp. 3d at 1117. That loss of local control over the County's own resources is precisely what the anti-commandeering doctrine forbids: "[c]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States," *Murphy v. NCAA*, 584 U.S. 453, 471 (2018), because "the allocation of scarce resources among competing needs and interests lies at the heart of the political process," *Alden v. Maine*, 527 U.S. 706, 751 (1999); accord *Colorado*, 831 F. Supp. 3d at 1116. *Washtenaw* applied that same reasoning to reject the identical maneuver just weeks before this filing: treating a demand for standing access to County property as anything other than commandeering, the court explained,

would "run afoul of the political accountability and cost-shifting concerns explained in *Murphy*, by making it difficult to distinguish which sovereign is responsible for ICE's operations base on county property, and would allow ICE to shift the costs of housing its officers to the County." 2026 WL 2453724, at *21 (citing *Murphy*, 584 U.S. at 473-74). The same is true of the SCAR: however the DOJ tries to dress it up, standing access to County property and records on demand not only shifts the cost of federal enforcement onto the County, but also strips the County of any say in how its own resources are used.

*Colorado* separately suggested that compelled access of this kind may also implicate the Fifth Amendment's prohibition on uncompensated physical occupation of government property. 831 F. Supp. 3d at 1118 (citing *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992), and *United States v. 50 Acres of Land*, 469 U.S. 24, 31 (1984)). The Court need not resolve that question to grant the Motion, since the Tenth Amendment analysis above is independently sufficient, and the cases Plaintiff cites in response, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 436 n.12 (1982), *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 83 (1980), *Lech v. Jackson*, 791 F. App'x 711 (10th Cir. 2019), and *Johnson v. Manitowoc County*, 635 F.3d 331 (7th Cir. 2011), address only voluntarily permitted or single, exigent intrusions, not the anti-commandeering question that controls here.

***D. Washtenaw Rejected This Same Property-and-Records-Access Theory Days Before This Filing.***

Like SCAR §§ 2(D)-(I) and 4, the *Washtenaw* County Board of Commissioners' resolution barred federal immigration officers from County property "without a judicial warrant or court order," and its Sheriff's Office would not detain individuals "solely at ICE's request" absent the

same. 2026 WL 2453724, at *2. The *Washtenaw* court held the Sheriff's policy was not preempted because "the mere choice of a locality not to cooperate with detainer requests does not 'regulate' the federal government in any meaningful sense," and that "[n]othing in the General Order prevents the federal government from issuing administrative warrants or detainers, . . . and nothing prevents ICE from simply obtaining a judicial warrant." *Id.* at *18. While detainers are not at issue with regard to the SCAR, the same reasoning applies. As to the Board's Resolution restricting ICE's access to County property, the court held that treating the government's "operations base" on County land as a Tenth Amendment-free zone "effectively forces the County to participate in federal immigration enforcement and violates the Tenth Amendment," expressly citing *Colorado* for the same proposition. *Id.* at *21. That reasoning applies with equal force to SCAR §§ 2(D)-(I) and 4(A). Plaintiff's Response, shortly after *Washtenaw* issued, does not acknowledge it, let alone distinguish it, and nothing in Plaintiff's arguments here would distinguish it either. Indeed, far from being an outlier, *Washtenaw* follows the substantial body of authority rejecting these theories and serves as a guide for why the Court should dismiss Plaintiff's claims in this case as well.

## II. PLAINTIFF'S EXPRESS PREEMPTION CLAIM (COUNT V) FAILS FOR THE SAME REASONS ALREADY BRIEFED.

Sections 1373 and 1644 still cannot preempt anything, because "every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *Murphy*, 584 U.S. at 477 (emphasis added); *Minnesota*, slip op. at 45 (Sections 1373 and 1644 "cannot satisfy th[at] second prerequisite" because "neither statute regulates private actors") (citing *Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of N.J.*, 8 F.4th 176, 181-82 (3d Cir. 2021)); *Colorado v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020). Plaintiff's new argument, that Section

1373(b)'s passive voice ("no person or agency may prohibit") makes the statute "evenhanded[]" as to private and government actors, Resp. at 17-18 (citing *Haaland v. Brackeen*, 599 U.S. 255, 283-85 (2023)), does not change the analysis. *Haaland* involved a statute that imposed direct, substantive obligations ("active efforts") on the individuals and entities it named; Sections 1373 and 1644 do nothing but forbid one government from restricting another government's communications with a third. That is regulation of government information-sharing, whatever verb tense Congress chose. To the extent Plaintiff would read these statutes as forbidding local governments from restricting information-sharing, rather than affirmatively commanding cooperation, that framing does not save them: Congress may no more forbid a state from restricting something than it may compel the state to permit it. *Murphy*, 584 U.S. at 475 ("[t]his distinction is empty," because "[t]he basic principle--that Congress cannot issue direct orders to state legislatures--applies in either event").

Further, Plaintiff's Response to the savings clause argument raised in the Motion fundamentally misunderstands it. County Defendants do not contend that the SCAR "is a nullity," Resp. at 8-9; they contend that because SCAR § 2 expressly yields whenever information-sharing is "required by federal or state statute, regulation, or court decision," there is no facial conflict for Plaintiff to point to -- regardless of whether Sections 1373 and 1644 could otherwise preempt state law. See *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022) (savings clause "requiring compliance with federal law" removes a statute from Section 1373's reach). Plaintiff offers no response to this authority.

## III. PLAINTIFF'S INTERGOVERNMENTAL IMMUNITY CLAIMS (COUNTS II & III) FAIL.

### *A. The SCAR Does Not Regulate the Federal Government.*

Plaintiff now argues the SCAR "regulates how federal officers carry out their functions vis-à-vis the County" because it requires a "different method, with a different standard," for accessing County property and records. Resp. at 23. But a rule that dictates what a county's own employees may or may not do with county resources regulates the county, not the federal government, however much it may affect the circumstances under which federal officers seek county cooperation. *Minnesota* rejected precisely this argument as to a materially identical directive: "They do not command the federal government or its contractors to act. They do not forbid the federal government or its contractors from acting. They do not control how the federal government or its contractors undertake their work. Rather, they regulate how state and local officials perform their duties." slip op. at 53; accord *Washtenaw*, 2026 WL 2453724, at *21 ("This instruction to County personnel is within the County's power as employer to direct the work of its employees and control the use of state resources.") (citing *McHenry Cnty. v. Raoul*, 44 F.4th 581, 593 (7th Cir. 2022)). *King County* and *CoreCivic*, on which Plaintiff again relies, remain distinguishable for the reason the Motion already gave: both involved laws that stripped ICE of a specific contractual or operational capability it already possessed (a contracted landing area, a private detention capacity) rather than a county's declination to volunteer its own employees and property. *Washtenaw* so held on nearly identical facts just weeks ago. 2026 WL 2453724, at *21.

### *B. Plaintiff Still Has Not Identified a Comparator.*

Nor does Plaintiff's Response save its claim that the SCAR discriminates against the federal government. Discrimination requires identifying a comparator, a similarly situated nonfederal actor the challenged law treats better, because the doctrine asks whether a regulation is "imposed equally on other similarly situated constituents of the State." *North Dakota v. United States*, 495 U.S. 423, 438 (1990). The FAC's only attempt, at paragraphs 132 and 133, alleges that "state, county, city, and other local law enforcement" and "other state law enforcement authorities" enjoy access that the SCAR denies ICE, without naming a single such agency or explaining how it is similarly situated. That is the same generic allegation the Motion already showed is insufficient, see Mot. at 16 (citing *United States v. Illinois*, 796 F. Supp. 3d 494, 534 (N.D. Ill. 2025)), and Plaintiff's Response adds nothing to it because it still does not name a single non-immigration law-enforcement agency that the SCAR permits into County non-public areas or County records without a judicial warrant. Cf. *McHenry Cnty.*, 44 F.4th at 594 ("Differential treatment is critical to a discrimination-based intergovernmental immunity claim."); *Illinois*, 796 F. Supp. 3d at 534 (rejecting an identical comparator theory for failure to "nam[e] a specific law enforcement agency" or explain "how it is similarly situated to ICE").

Plaintiff's two new citations do not help: *Genesis GSA Strategic One, LLC v. Howard County*, No. 1:26-cv-915-ABA, 2026 WL 2294479 (D. Md. Aug. 10, 2026), and *GEO Group, Inc. v. Ryan*, No. 1:26-cv-2533-DDD-SBP (D. Colo. Aug. 20, 2026), are unpublished preliminary-injunction orders from other districts involving state permits for or regulation of privately built or privately run immigration detention facilities, not final rulings on a resource-allocation resolution like the SCAR. *Minnesota*'s answer to the "immigration is uniquely federal, so no comparator is needed" theory remains the better-reasoned view: a county's decision not to rebuild a washed-out

road serving only a federal facility is not discrimination against the federal government merely because the road served only federal purposes; the doctrine asks about differential treatment, not subject matter. slip op. at 54 n.10.

## IV. SEVERABILITY INDEPENDENTLY DEFEATS PLAINTIFF'S FACIAL CHALLENGE.

Plaintiff's Response newly claims that it "seeks relief only as to the SCAR provisions challenged in the FAC that unlawfully harm the United States," and that unaddressed provisions "can be severed." Resp. at 24. That is not what the FAC requests. The FAC asks this Court to declare "the Challenged Laws," which include the SCAR in its entirety, "unconstitutional, invalid, and unenforceable," and to enjoin "the operation and enforcement of the Challenged Laws" as a whole. FAC, Prayer for Relief ¶¶ A, D (Doc. 42 at 70). Plaintiff's Response does not dispute that it seeks facial invalidation of the SCAR while leaving unaddressed provisions that the Motion showed have obvious lawful applications. See Mot. at 22-23. Plaintiff cannot now narrow its request in a response brief without amending its complaint, but if the Court holds Plaintiff to its new position, Sections 1, 4(C), 5, and 6, which Plaintiff still does not contend are unlawful, are not properly before the Court and cannot be enjoined regardless of the outcome as to any other provision. Nor does *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 913-16 (10th Cir. 2016), rescue the broader relief the FAC actually seeks: that case addressed whether a single rule could be challenged as to one class of actor without also being shown invalid as to another, not whether a defect in some provisions of a multi-section instrument justifies enjoining separate, unchallenged provisions. That question is governed by severability doctrine and SCAR § 7, which Plaintiff's Response does not adequately address. A facial challenge fails where, as here, the

challenger cannot show "that no set of circumstances exists under which the [provision] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).

## V. THE ACTING COUNTY MANAGERS SHOULD BE DISMISSED AS REDUNDANT DEFENDANTS.

Plaintiff's Response defends the County Managers as proper defendants because the SCAR "direct[s] the County Manager to implement" its provisions. Resp. at 23-24. That misses the point: an official-capacity claim against the Acting County Managers is a claim against the County, which is already a defendant, and is accordingly redundant regardless of what duties the Managers happen to perform. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); see also *Washtenaw*, 2026 WL 2453724, at *5 n.2 (suits against a county sheriff's office or board of commissioners "are generally considered suits against the municipality itself"). Any injunction against the County will bind its officers, including its Acting Managers, who receive notice of it. Fed. R. Civ. P. 65(d)(2). The Court should dismiss the claims against the individually named Acting Managers as redundant.

In addition, the premise of Plaintiff's argument that the County Managers are proper defendants because they are designated to implement the provisions of the SCAR is independently flawed. The same resolution that directs the County Manager to implement its restrictions also directs that implementation should not be undertaken to the extent it is prohibited "by federal or state statute, regulation, or court decision." SCAR § 2. A ruling by this Court that some SCAR provision is preempted or otherwise invalid would itself be a "court decision" within that clause, and the Acting County Managers would, by the SCAR's own terms, no longer be directed to implement whatever the Court has invalidated. The Managers could act unlawfully by

implementing the SCAR, if at all, only by defying such a ruling and continuing to enforce a provision this Court has already held invalid, a hypothetical future act that no one alleges is threatened here. Any claim against the County Managers premised on that possibility is not ripe. *Texas v. United States*, 523 U.S. 296, 300 (1998) (a claim is not ripe if it "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all'") (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). The claims against the Acting County Managers should be dismissed for this reason as well.

**CONCLUSION**

For these reasons, and those set forth in the Motion, County Defendants respectfully request that the Court dismiss the First Amended Complaint against them, in its entirety and with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

NEW MEXICO ASSOCIATION OF COUNTIES

/s/ David Roman
BRANDON HUSS
DAVID ROMAN
BREE BARNETT
444 Galisteo St
Santa Fe, NM 87501
(505) 820-8116
bhuss@nmcounties.org
droman@nmcounties.org
bbarnett@nmcounties.org
Attorneys for Doña Ana County Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, I filed the foregoing pleading electronically through the CM/ECF system, which caused all counsel of record to be served electronically, as more fully reflected on the Notice of Electronic Filing.

/s/ David Roman
David Roman