**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

THE STATE OF NEW MEXICO, *et al.,*

Defendants.

No. 1:26-cv-01471-KG-LF

**REPLY IN SUPPORT OF BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BERNALILLO[1] AND CINDY CHAVEZ'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [DOC. 42]**

In response to the Bernalillo County Defendants' motion to dismiss, the United States attempts to create a conflict between federal law and the Bernalillo County Safer Community Places Ordinance ("Ordinance") where none exists. In attempting to do so, the United States misreads both the Ordinance (contending that it does far more than a plain reading of its text supports) and the authority of immigration enforcement officials conferred by Congress. There is no conflict, and there is thus no preemption. For similar reasons, there is no violation of the doctrine of intergovernmental immunity. Finally, the United States fails to demonstrate that Cindy Chavez is a proper party to this improper action. As set forth in the motion and below, the Court should dismiss the First Amended Complaint as to the Bernalillo County Defendants for failure to state a claim upon which relief can be granted.

[1] The Board of County Commissioners was substituted for Bernalillo County. *See* Docs. 80, 81.

## RESPONSE TO THE UNITED STATES' LEGAL BACKGROUND

### A. THE ORDINANCE

Pursuant to its authority "to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order and comfort and convenience of its inhabitants," Doc. 42-3 at 2,[2] Bernalillo County enacted the Ordinance focused on places that provide services necessary for public safety and health and locations where the County holds a proprietary interest. *Id.* at 2-3. The Ordinance prohibits such places from voluntarily permitting law enforcement (not just federal law enforcement) "engaged in or supporting immigration enforcement" entry to "non-public areas . . . ." *Id.* at 3-4. The Ordinance similarly prohibits such places from providing voluntary access to "student or patient records" – and only those categories of records, consistent with federal law (FERPA and HIPAA). *Id.* at 4.

The Ordinance does not claim the authority to admit, deny, or deport any individual or group of people to the United States, nor does the Ordinance require or permit any person to disregard a valid judicial search or arrest warrant. *See generally id.*

### B. THE IMMIGRATION AND NATIONALITY ACT

The United States claims that the Ordinance is preempted by the Immigration and Nationality Act ("INA"), *see* Doc. 82 at 3-5, 8-20, but Congress did not provide in that Act the sweeping authority that the United States now asserts. Specifically, the Act permits issuance of administrative warrants only for the purpose of arresting and detaining "an alien . . . pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226 says nothing about such warrants granting access to non-public areas and does not confer the authority for administrative search warrants to do so. *See generally* 8 U.S.C. § 1226.

---

[2] This reply uses the Court's pagination, rather than the internal pagination, of documents filed with the Court.

Indeed, although Homeland Security regulations enumerate the immigration officials who have authority to ***issue*** arrest warrants for immigration violations, 8 C.F.R. § 287.5(e)(2), the parallel provision for search warrants enumerates only those who may ***execute*** search warrants, 8 C.F.R. § 287.5(e)(1).

**STANDARD OF REVIEW**

In addition to the familiar *Twombly/Iqbal* standards set forth in both the motion and the response, *see* Doc. 75 at 8-9, Doc. 82 at 7, the United States concedes that it brings a facial challenge to those portions of the Ordinance that it challenges. *See* Doc. 82 at 26 n.5. "A facial challenge to [legislation] is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [Ordinance] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "Further, the nature of a preemption challenge, like the one at issue in this case, lends itself to an immediate resolution in a situation such as this where further factual development is unnecessary." *United States v. Supreme Ct. of N.M.*, 980 F. Supp. 2d 1334, 1343 (D.N.M. 2013). The United States' reliance on *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023), *see* Doc. 82 at 7, is thus misplaced. The *Clinton* court cautioned against dismissal where the complaint contains well-pleaded allegations that, if proven, would entitle a claimant to relief "even if it strikes a savvy judge that actual proof of those facts is improbable." *See Clinton*, 63 F.4th at 1276. That caution is unwarranted here, where the Court's task is to determine whether the United States has carried its heavy burden to show that there is no set of circumstances under which the Ordinance would be valid – a task that requires analysis only of what the Ordinance requires of those to whom it applies, and whether in all possible circumstances, those requirements would violate the INA. As set forth below, the United States cannot meet that burden.

## ARGUMENT

### I. THE ORDINANCE IS NOT PREEMPTED BECAUSE IT DOES NOT CONFLICT WITH FEDERAL LAW.

There is no obstacle preemption here because the Ordinance does not conflict with federal law. The federal government's objection is that actually following the law (including the Fourth Amendment) is inconvenient given the administration's indiscriminate enforcement efforts.

#### A. THE ORDINANCE DOES NOT CONFLICT WITH THE INA.

The United States claims that the Ordinance conflicts with federal law but fails to show any such conflict. *See* Doc. 82 at 8-17. The United States offers only overbroad statements about both the Ordinance and the INA to attempt to create a conflict, but the gravamen of the argument seems to be that because the Ordinance prohibits Safer Community Places from voluntarily providing law enforcement officers engaged in immigration enforcement access to non-public areas and records, it contravenes the authority to arrest aliens pursuant to an administrative warrant. *See id.* That puts at the center of the dispute the constitutional problem that arises when law enforcement ignores the difference between administrative arrest warrants issued by DHS personnel and lawful search warrants issued by an independent judge in accordance with the Fourth Amendment. Administrative warrants under the INA are for arrest only; they do not permit entry into premises. *See, e.g.*, *Steagald v. United States*, 451 U.S. 204, 212-13 (1981) ("[W]hile an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ."); *see also In re Sealed Search Warrant Application*, 784 F. Supp. 970 (S.D. Tex. 2025) (applying the same principle in denying an administrative inspection warrant to ICE to "search

for and seize individuals who might be in the United States unlawfully, and to investigate a pattern or practice of employing unauthorized aliens.”).

An administrative arrest warrant under the INA does not permit entry into nonpublic areas. The United States has failed to show that the INA even purports to authorize administrative search warrants. If a federal statute purported to grant that authority, it would violate the Fourth Amendment. As such, there is no conflict.[3]

### B. THE UNITED STATES ATTEMPTS TO STRETCH THE DOCTRINE OF OBSTACLE PREEMPTION BEYOND RECOGNITION.

Perhaps recognizing that the Ordinance does not actually conflict with the INA, most of the United States’ response is devoted to the doctrine of obstacle preemption, but that doctrine does not allow the United States to sweep away state and local laws it does not like.

“Implied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives; such an endeavor would undercut the principle that it is Congress rather than the courts that pre-empts state law.” *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (text only). “No more than in field preemption can the Supremacy Clause be deployed here to elevate abstract and unenacted legislative desires above state law; only federal laws made in pursuance of the Constitution, through its prescribed processes of bicameralism and presentment, are entitled to preemptive effect.” *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 778 (2019) (Gorsuch, J., plurality) (text

---

[3] The United States mischaracterizes the sole authority it offers for the proposition that administrative warrants under the INA permit entry into premises. *Compare* Doc. 82 at 9-10 (citing *United Sates v. Malagerio*, 49 F.4th 911, 915-16 (5th Cir. 2022) as “administrative warrant allowed arrest ***in curtilage*** without Fourth Amendment issue”) (emphasis added) *with Malagerio*, 49 F.4th at 915 (“As for Malagerio’s notion that he was arrested in the curtilage, the district court found to the contrary. Malagerio was spread on the hood of his truck that was parked in an open driveway between his trailer and a neighbor’s. ***Such an open driveway is not curtilage***.”) (emphasis added).

only). "[A]ny evidence of pre-emptive purpose, whether express or implied, must therefore be sought in the text and structure of the statute at issue." *Id.* (text only).[4]

Moreover, in arguing for obstacle preemption, the United States fails entirely to acknowledge "the presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough Cnty. v. Automated Med. Lab'ys*, 471 U.S. 707, 715 (1985); *see also id.* at 716 (a party seeking preemption "must thus present a showing of implicit pre-emption of the whole field, or of a conflict between a particular local provision and the federal scheme, that is strong enough to overcome the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation.").

Here, the Ordinance is expressly "to provide for the safety" and "preserve the health" of Bernalillo County inhabitants. Doc. 42-3 at 2. If the Ordinance was not express in its purpose, the health and safety implications would be obvious given the nature of services residents rely on Safer Community Places and Bernalillo County to receive. Thus, the presumption set forth in *Hillsborough County* applies, and the United States has made no attempt to overcome it.

Even in the absence of that presumption, the United States fails to show obstacle preemption. As the United States acknowledges, a local law is preempted only if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of ***Congress***." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 164 (2016) (emphasis added) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)). "[T]he possibility that federal enforcement priorities might be upset is not enough to provide a basis for preemption.

[4] Indeed, in the plurality opinion, Justice Gorsuch appeared to question the validity of the doctrine in general. *See id.* at 788-80; *see also id.* at 781 (Ginsburg, J., concurring in the judgment) (noting that because petitioners' arguments failed under existing doctrine, "there is little reason to question, as Justice Gorsuch does . . . whether that doctrine should be retained.").

The Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal officers." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020) (quoting U.S. Const. art. VI); *see also Vapor Tech. Ass'n v. Wooten*, 184 F.4th 329, 353 (4th Cir. 2026) ("[O]bstacle preemption inquires into Congress' objectives, not the Executive's.").

Here, the United States fails at the first step. If Congress so desired (and the Fourth Amendment so permitted), it could have provided for administrative warrants that permit entry into premises, rather than merely arrest warrants that permit the seizure of individuals. It did not. Indeed, the United States offers no Congressional "purposes and objectives" other than the broad and uncontested principle that Congress may regulate immigration. *See generally* Doc. 82. The problem for the United States is that Congress did not provide (and the Fourth Amendment would not allow) administrative warrants to enter the premises of third parties to arrest people. That silence, too, reflects Congress's objectives, as well as the limits on those objectives – both internal and imposed by the Constitution.[5]

Moreover, the Ordinance is not an obstacle to immigration enforcement. The Ordinance prohibits Safer Community Places only from providing "voluntary consent to law enforcement agents engaged in or supporting enforcement from: (1) entering non-public areas; or (2) accessing, reviewing or obtaining student or patient records." Doc. 42-3 at 4. The United States suggests that the Ordinance appears to bar access to non-public areas even with a judicial warrant, *see* Doc. 82 at 6 n.1, but the Ordinance contains no such provision. Indeed, it would be

[5] The United States' contention that the Ordinance is preempted because it restricts access to property also fails for this reason. It is immaterial that the Executive seeks access to Safer Community Places with only an administrative warrant because Congress has not provided the Executive with that authority.

surprising to find in any other case that the United States considered compliance with a judicial warrant to be a "voluntary" decision.

The requirement to obtain a judicial warrant is not an obstacle to federal law enforcement. Not only is it required by the Constitution and, implicitly, by the omission of administrative search warrants from the INA, "[t]he additional burden of obtaining a search warrant at the same time is miniscule." *Steagald*, 451 U.S. at 222.

The United States suggests that the Ordinance also presents an obstacle by requiring Safer Community Places to notify workers of I-9 inspections and immigration enforcement. *See* Doc. 82 at 14-16; *see also* Doc. 42-3 at 5-8. That contention also fails. Indeed, Congress has made it a defense to the charge of unlawful employment of people not authorized to work in the United States for "a person or entity that establishes that it has complied in good faith with the requirements of subsection (b) with respect to the hiring, recruiting, or referral for employment of an alien in the United States . . . ." 8 U.S.C. § 1324a(a)(3). The "subsection(b)" referred to above is the statutory employment verification system. *See* 8 U.S.C. § 1324a(b). In *Split Rail Fence Co., Inc. v. United States*, 852 F.3d 1228 (10th Cir. 2017), the Tenth Circuit denied an employer's petition for review of an ALJ's summary decision imposing penalties for continuing to employ an unauthorized employee in violation of Section 1324a(a)(2) in part because notices sent by ICE "provided Split Rail with notice that the named employees were suspected to be unauthorized and created a duty to examine additional I-9 documentation ***from each employee***." *Id.*at 1247 (emphasis added); *see also* 8 C.F.R. § 274a.2(b)(1)(vii) ("In order to reverify on the Form I-9, the employee or referred individual must present a document that either shows continuing employment eligibility or is a new grant of work authorization."). In sum, employers

are expected to ensure that their employees are authorized to work in the United States; it is difficult to see how that can be accomplished without communicating with those employees.

The United States' unsupported and unsupportable allegation that the Ordinance amounts to harboring or requires others to illegally harbor also fails. *See* Doc. 82 at 14-16. On this issue, the United States either failed to appreciate or is trying to obscure Bernalillo County's rebuttal to the overheated rhetoric in the complaint. Given the I-9 verification requirements for every employee, the County's baseline, reasonable expectation is that the individuals entitled to notice under the Ordinance ***overwhelmingly*** are authorized to work in the United States. And as Bernalillo County set out in its motion, there are a range of reasonable reasons to provide notice that have nothing to do with aiding anyone from avoiding being caught for violating federal law. Doc. 75 at 15-16. That is particularly true given the harsh tactics and resulting chaos that ICE raids have caused across the country. Invoking harboring under these facts is hard to see as anything but an intimidation tactic, particularly given that the United States never would be in a position to prove harboring based on mere compliance with the Ordinance. *Id*. at 14-15.

The United States' argument that the relief it seeks would not violate the anticommandeering doctrine fails for similar reasons. The Ordinance prohibits only voluntary consent to access to Community Safer Places, including student and medical records. Where there is, in fact, compulsory process (i.e., a judicial warrant or an enforceable subpoena), the Ordinance does not prohibit compliance with such process. Doc. 42-3 at 4. What the United States seeks is coerced compliance, in the absence of authorizing law, with its enforcement priorities, in disregard of the powers over public safety and health reserved under the Tenth Amendment to Bernalillo County as a political subdivision of the State of New Mexico. The doctrine applies even when the federal government "indirectly coerces a State to adopt a federal

regulatory system as its own." *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (2012). Here, the United States seeks an order requiring the Bernalillo County Defendants to abide by the Executive's view of what an administrative warrant does or does not authorize, i.e., a federal regulatory system.

## II. THE ORDINANCE DOES NOT VIOLATE THE DOCTRINE OF INTERGOVERNMENTAL IMMUNITY.

The Ordinance does not violate the doctrine of intergovernmental immunity because it neither discriminates against nor impermissibly regulates the federal government.

The Ordinance does not discriminate against the federal government because it prohibits voluntary consent to access to ***any*** law enforcement officers engaged in immigration enforcement, requires notice of inspection by ***any*** government agency, and notice of ***any*** law enforcement agent engaging in or supporting immigration enforcement. Doc. 42-3 at 4 (prohibiting Safer Community Places from "providing voluntary consent to law enforcement agents engaged in or supporting immigration enforcement" to access non-public areas, as well as student and medical records); *id.* at 5 ("An employer shall provide notice to each current employee of any inspection by a government agency . . . ."); *id.* at 7 (requiring notice to workers "[i]f a law enforcement engaging in or supporting immigration enforcement is present at a place of work other than as part of an I-9 inspection . . . .").

Again, the United States attempts to create a conflict where none exists by misreading the Ordinance. The United States erroneously claims that the Ordinance does not restrict access for state and local law enforcement. It is telling that United States relies on its First Amended Complaint, rather than the text of the Ordinance to do so. *See* Doc. 82 at 21. But the Court "need not accept legal conclusions as true" in reviewing a motion to dismiss. *Spinelli v. Coherus Biosciences, Inc.*, 167 F.4th 1274, 1280 (10th Cir. 2026). The plain text of the Ordinance makes

no distinction between federal, state, or local law enforcement, whether in prohibiting voluntary consent to access or in requiring notification. *See generally* Doc. 42-3. It thus does not discriminate against the federal government.

The Ordinance also does not impermissibly regulate the federal government. As set forth in the motion, the Ordinance imposes no obligations on the federal government. *See* Doc. 75 at 18. The United States responds mostly with generalities about cases and principles not applicable here; the only specific item they raise is the "judicial warrant requirement." *See* Doc. 82 at 23-26. But as set forth above, the United States' position requires the Court to ascribe to administrative warrants a power that Congress did not provide in the INA and that would into the foundational constitutional requirement for warrants issued by a neutral magistrate. There is no impermissible regulation here.

**III. CINDY CHAVEZ IS NOT A PROPER PARTY TO THE ACTION.**

Finally, the United States' argument that County Manager Cindy Chavez is a proper party fails because the United States has not alleged a plausible claim for relief against her. The first amended complaint alleges only that she is "tasked with the execution of all policies enacted by the Bernalillo County Board of County Commissioners, including the execution, implementation, and enforcement of the [Ordinance]," and that she has "implemented and enforced the [Ordinance.]" Doc. 42 ¶ 31. The United States does not allege any specific action that County Manager Chavez took either to implement or enforce the Ordinance – in fact, as the Bernalillo County Defendants noted in their motion, the Ordinance does not impose penalties of any kind. *See* Doc. 75 at 19; *see also* Doc. 42-3. Nor does the United States identify what relief it seeks from County Manager Chavez. *See* Doc. 42 at 70. The United States seeks injunctive relief against all Defendants "enjoining the operation and enforcement of" all of the state and local laws they challenge, *see* Doc. 42 at 70, but it does not allege any action – past, present, or future

– by County Manager Chavez that has caused, is causing, or will cause "irreparable injury in the absence of the injunction . . . ." *See, e.g.*, *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).[6] The United States has thus failed to plausibly allege claims against County Manager Chavez (such as any can be divined from the first amended complaint), and she should be dismissed because she simply is not a proper party to this lawsuit.

**CONCLUSION**

For the reasons stated above, the Board of County Commissioners of the County of Bernalillo and Bernalillo County Manager Cindy Chavez respectfully request that the Court dismiss the United States' claims against them.

Respectfully submitted,

PEIFER, HANSON, MULLINS & BAKER, P.A.

By: */s/Mark T. Baker*
Mark T. Baker
Matthew E. Jackson
Post Office Box 25245
Albuquerque, NM 87125-5245
Tel: 505-247-4800
Email: mbaker@peiferlaw.com
mjackson@peiferlaw.com

*Attorneys for Defendants Board of County Commissioners for Bernalillo County and Cindy Chavez*

[6] The United States moved for a preliminary injunction, but it did so before County Manager Chavez was even named as a Defendant. *See generally* Doc. 2.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of September 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

PEIFER, HANSON & MULLINS, P.A.

*/s/Mark T. Baker*
Mark T. Baker